**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

THE CITY OF NEW YORK; THE CITY OF
PHILADELPHIA; and THE CITY AND
COUNTY OF SAN FRANCISCO;

    *Plaintiffs,*

v.

THE UNITED STATES DEPARTMENT OF
DEFENSE; *et al.*;

    *Defendants.*

Civil Action No.: 1:17-cv-01464-CMH-MSN

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR RENEWED MOTION FOR EXPEDITED DISCOVERY**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1
FACTUAL BACKGROUND ...................................................................................................... 3
ARGUMENT ................................................................................................................................ 7
    I.    The Standard for Permitting Expedited Discovery ............................................................ 7
    II.    Plaintiffs Should Be Permitted to Conduct Expedited Discovery Here ............................ 8
    III.    The Specific Discovery Plaintiffs Seek is Proper Under the APA ................................... 11
CONCLUSION ........................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aslam v. Mukasey*,
   531 F. Supp. 2d 736 (E.D. Va. 2008) ....................................................................................13

*Axiom Resources Mgmt. v. United States*,
   564 F.3d 1374 (Fed. Cir. 2009)..............................................................................................11

*Bar MK Ranches v. Yuetter*,
   994 F.2d 735 (10th Cir. 1993) ...............................................................................................12

*Boston Redevelopment Auth. V. Nat'l Park Serv.*,
   125 F. Supp. 3d 325 (D. Mass. 2015) *aff'd*, 838 F.3d 42 (1st Cir. 2016)................................12

*Elkins v. D.C.*, 250 F.R.D. 20, 27 (D.D.C. 2008) .............................................................................7

*ForceX, Inc. v. Tech. Fusion, LLC*,
   No. 11-cv-88 (TEM), 2011 WL 2560110 (E.D. Va. June 27, 2011).........................................8

*Hard Drive Productions, Inc. v. Does 1-30*,
   No. 11-cv-345 (TEM), 2011 WL 2634166 (E.D. Va. July 1, 2011).........................................7

*Hill Dermaceuticals v. FDA*,
   709 F.3d 44 (D.C. Cir. 2013) .................................................................................................12

*Malon v. Franklin Fin. Corp.*,
   No. 14-cv-671 (HEH) (RCY), 2014 WL 5795730 (E.D. Va. Nov. 6, 2014)............................8

*Physicians Interactive v. Lathian Sys., Inc.*,
   No. 03-cv-1193, 2003 WL 23018270 (E.D. Va. Dec. 5, 2003)..........................................8, 13

*In re Sealed Case*,
   121 F.3d 729 (D.C.Cir.1997)...................................................................................................7

*Sony Music Entm't Inc. v. Does 1-40*,
   326 F. Supp. 2d 556 (S.D.N.Y. July 26, 2004) ......................................................................12

*In re Subpoena Duces Tecum*,
   145 F.3d 1422 (D.C.Cir.), *modified,* 156 F.3d 1279 (D.C.Cir.1998) ......................................7

*Telecommunications Research & Action Center v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) .................................................................................................13

*United States v. AT & T*,
   524 F.Supp. 1381 (D.D.C.1981)..............................................................................................7

**Statutes and Codes**

United States Code
    Title 34 section 40901(e)(1) ............................................................................................. 13

**Rules and Regulations**

Federal Rule of Civil Procedure
    Rule 26(d) ....................................................................................................................... 1, 7

Plaintiffs the City of New York, the City of Philadelphia and the City and County of San Francisco (collectively, "Plaintiffs"), by and through their undersigned counsel, pursuant to Rule 26(d) of the Federal Rules of Civil Procedure and this Court's Local Rules, hereby renew their December 29, 2017 Motion for Expedited Discovery, and state as follows:

## PRELIMINARY STATEMENT

On January 19, 2018, this Court directed Defendants to produce, by March 5, 2018, the Administrative Record underlying their two decades of admitted agency inaction.  That inaction related to Defendants' failure to comply with their statutory duty to report to the FBI, quarterly, all criminal convictions and dishonorable discharges of members and former members of the Military Services disqualified from gun ownership.  Defendants have admitted — including in sworn testimony to Congress— failing for two decades to fulfill that unambiguous statutory duty.  *See, e.g.*, Compl. ¶¶ 69, 79, ECF No. 1.

This Court further directed on January 19th that, within seven days of receiving the government's Administrative Record, Plaintiffs respond whether they "believe that the Administrative Record is inadequate and make every effort collaboratively on both sides to ensure that the record is complete."  Plaintiffs have now done that — both by letter (*see* the March 8, 2018, deficiency letter attached as Exhibit A), and in a March 9, 2018 telephonic meet-and-confer.

The Court went on to state on January 19th that, "if that process is not satisfactory, the plaintiffs may file a motion to be heard on a week's notice on our usual non-dispositive schedule … for discovery if the plaintiffs believe that there's a basis for doing so." (Transcript of Hearing at 46:2-11, ECF No. 42.)  This is now that motion.

Discovery is needed here, on an expedited basis, for the upcoming hearing on Plaintiffs' December 29, 2017, Motion for a Preliminary Injunction. That injunction would compel Defendants to fulfill their statutory reporting obligations.[1] The specific discovery Plaintiffs seek in connection with the PI hearing consists of: (1) Interrogatories and Requests for Production to be served on the four entity defendants,[2] and to be responded to within thirty calendar days of service; and (2) one deposition of each Defendant, to be taken within thirty calendar days of Plaintiffs' receipt, from the relevant entity defendant, of the requested documents and interrogatory responses.

Such discovery is essential here for the Court to fully understand the *reasons* for Defendants' decades-long systemic failure to comply with law, and to now craft an appropriate and complete remedy. As detailed below, the Administrative Record produced by Defendants on March 5, 2018, fails even to identify, let alone explain, the reasons for that prolonged agency inaction. As Plaintiffs' March 8, 2018 Administrative Record deficiency letter to Defendants, attached here to as Exhibit A, explains:

- The Administrative Record produced by Defendants consists overwhelmingly of boilerplate policy and instruction documents that provide no information whatsoever about *why* Defendants have, for two decades, failed to meet their reporting obligations, and likewise provides no analysis as to *why* those policies and procedures were so frequently ignored.

---

[1] The PI hearing is currently set for April 6, 2018. But, as the Court observed on January 19th, that hearing date will now need to be briefly adjourned, for a period concomitant with (1) the six weeks that the Court allowed Defendants to assemble the Administrative Record, and (2) the time needed for the briefing and determination of the instant motion. (Transcript of Hearing at 45:12-18, ECF No. 42.)

[2] The four entity defendants are the United States Department of Defense, the United States Department of the Air Force, the United States Department of the Navy and the United States Department of the Army. Copies of the proposed Interrogatories and Requests for Production are attached as Exhibits B and C.

2

- The vast majority of the Administrative Record is, in fact, nothing more than documents related to minor revisions of — and not actual compliance, or non-compliance, with — DoD policies, instructions, and guidance.

- Although the Administrative Record also includes copies of the three publicly available DoD OIG reports from 1997, 2015 and 2017 (each finding the military services did not comply with their reporting obligations), the record is completely silent as to what was discussed, proposed, or done by the military services during the lengthy periods between those OIG condemnations. The record, in fact, identifies no steps actually taken by the military services, during those lengthy periods, to achieve compliance with law.

- The small handful of documents in the Administrative Record that do discuss post-OIG report compliance efforts all relate exclusively to efforts undertaken only after the November 2017 Sutherland Springs shootings. And, not only is nothing earlier even proffered, what is produced post-November 2017 is itself woefully incomplete. For example:

    - There is a February 9, 2018, Practice Directive from the Military Justice Branch of the Marines, which purports to implement "interim remedial measures." But the document then simply outlines more procedures to be followed for reporting future disqualifying events, with no evidence whatsoever of any effort to clean-up the Marines' two decades of prior under-reporting. On that latter score, the document just tells readers to stay tuned: "[e]xpect and prepare for future remedial measures which *may* require examination of past cases." (DoD OIG-000932-000937.) (emphasis added).

    - There is a November 17, 2017, Navy memo informing the Director of the Naval Criminal Investigative Service (NCIS) that the Navy planned to conduct audit research on the Navy's reporting process of convicted offenders to the NCIC database. (DoD OIG-000950). But a February 5, 2018, document, two and a half months later, shows the Navy thereafter deferred indefinitely even considering such an audit. (DoD OIG-000952-000955.)

Accordingly, the Administrative Record produced by Defendants comes nowhere near answering the critical questions posed by Plaintiffs' proposed discovery, and Plaintiffs therefore now renew their motion for that discovery.

**FACTUAL BACKGROUND**

Plaintiffs' underlying factual allegations are fully set forth in their December 26, 2017, Complaint, and in their December 29, 2017 Memorandum of Law in Support of their P.I.

3

Motion.  *See* ECF Nos. 1 and 12.  Accordingly, for the sake of brevity, Plaintiffs summarize below only those facts relevant to the need now for expedited discovery.

Plaintiffs are all past, present and future regular users of the National Instant Criminal Background Check System ("NICS") or similar state databases that incorporate NICS data.  *See* Compl. ¶¶ 22-38, ECF No. 1.  In conducting such background checks through NICS, Plaintiffs regularly access, directly or indirectly, the records in the National Crime Information Center ("NCIC") database, relying upon the accuracy and completeness of those records.  Plaintiffs are each therefore directly impacted by Defendants' failure to report all disqualifying conviction dispositions and dishonorable discharges.

The four entity Defendants are each required by Federal law to report such information regarding members and former members of the military services for inclusion in NICS (and, more specifically, the NCIC database), at least quarterly.  *See Compl*. ¶¶ 60-64. But the entity defendants admit they failed for decades to comply with those reporting requirements — a failure confirmed by three separate internal DoD Inspector General reports (one published as recently as December 4, 2017), by sworn Senate testimony, and by the tragic Sutherland Springs shootings.  *See id*. ¶¶ 69, 76-80, 83.

Understanding the specific *reasons* for Defendants' long-standing and systemic compliance failures, and how to cure those failures once and for all, requires careful judicial consideration in these proceedings.  Such information is essential to crafting appropriate judicial remedies to this long-standing problem — a problem Defendants' own March 5th filings in this case (ECF Nos. 44-45) acknowledge *still* remains unsolved.[3]

---

[3]  On March 5th, Defendants filed a Memorandum of Law in Support of Defendants' Motion to Dismiss and in Opposition to Plaintiffs' Motion for Preliminary Relief ("March 5th

Plaintiffs initially filed a Motion for Expedited Discovery, seeking that precise information, on December 29, 2017. *See* ECF Nos. 7-9. The Court heard argument on that initial motion on January 19, 2018, agreeing with Defendants to permit them six weeks — until March 5, 2018 — to assemble and produce an Administrative Record that, Defendants argued, would obviate the need for Plaintiffs' discovery. *See* Order, ECF No. 36.

Defendants timely produced that Administrative Record on March 5, 2018. But, as summarized above, and as detailed in Plaintiffs' accompanying March 8th deficiency letter to Defendants (Ex. A), there are serious deficiencies in that record. Indeed, the vast majority of Defendants' Administrative Record is nothing more than policy statements, instructions, guidance, and documents related to minor revisions to those policies, instructions and guidance forms. Significantly, the Administrative Record contains no analysis whatsoever of *why*, for two decades, those policies, instructions and procedures were largely ignored.

Defendants' Administrative Record also includes the three already public DoD OIG reports — reports described in detail in Plaintiffs' Complaint. And, while those public reports do incorporate contemporaneous comments from the military services seeking to explain why they had not previously met their reporting obligations, and promising to do better, the Administrative Record includes no documents at all following either the 1997 OIG Report or the 2015 OIG Report explaining why those promises of compliance were never kept, nor indicating any actual efforts to keep them. The Administrative Record is, in fact, completely silent as to what was

---

Memorandum"). That memorandum was accompanied by the Declaration of Grant A. Fleming. In his Declaration, Mr. Fleming describes how, in the four months since the Sutherland Springs shootings, the Army has submitted over 32,000 names of disqualified individuals to the FBI. But, Mr. Fleming nowhere claims that represents full compliance with the Army's statutory obligation, and more significantly, he describes <u>no</u> parallel mass submissions of names by the Navy, by the Marines, or by the Air Force. Four months after the Sutherland Springs tragedy, all four service branches therefore still remain in violation of law.

done by the military services or by DoD to remedy the failings described by OIG during the years between OIG reports. (There were 18 years between the OIG's 1997 Report and the 2015 Report, and then almost another three years between the OIG's 2015 report and OIG's December 2017 report.)

OIG's December 2017 report instead makes it plain that those reporting problems were *never* fixed. Twenty years after OIG's first report, OIG reported in December 2017 that there were still enormous numbers of missing fingerprint cards and final disposition reports throughout the DoD. (DoD OIG 000429).

Why was that still so? The Administrative Record offers no explanation. Indeed, only a relative handful of documents even reference compliance efforts following the OIG's 2017 report. Remarkably, those few documents deal exclusively with efforts to be undertaken only after the November 2017 Sutherland Springs tragedy; there's nothing earlier at all. And, as summarized above, and further detailed in Plaintiffs' accompanying March 8 deficiency letter, the minimal documentation Defendants provide regarding the post-November 2017 period is also woefully incomplete. (*See* Ex. A at pp. 2-3.)[4]

Faced with these serious deficiencies in the Administrative Record, Plaintiffs sent Defendants the March 8th letter attached as Exhibit A. That letter specifically identified the documents that still needed to be produced. Plaintiffs thereafter conducted a telephonic meet-

---

[4] For example: The Administrative Record includes a January 22, 2018, Memo from the Secretary of the Navy claiming to be the "next" in a series of steps taken since November 2017. But the prior documents are not included, nor are there any such documents provided following the two prior OIG reports. In addition, the Administrative Record includes a November 14, 2017, Air Force Memo that purports to launch a review of "ALL closed cases." Yet there are no documents related to that review and, again, no similar such documents produced for the period prior to November 2017.

and-confer with Defendants on March 9th. During that call, however, Defendants maintained the Administrative Record was properly certified as complete, that the additional information Plaintiffs requested was privileged (including under a deliberative process privilege)[5], and that they were also unwilling to produce a privilege log. At bottom, then, Defendants refused to supplement the Administrative Record at all.

Because that Administrative Record entirely fails to provide the *reasons* for Defendants' decades of agency inaction, Plaintiffs now file this Renewed Motion for Expedited Discovery.

## ARGUMENT

### I. The Standard for Permitting Expedited Discovery

Federal Rule of Civil Procedure 26(d) specifically permits a court to authorize expedited discovery. *See Hard Drive Productions, Inc. v. Does 1-30*, No. 11-cv-345 (TEM), 2011 WL 2634166, at *1 (E.D. Va. July 1, 2011) ("The discovery rules contained in the Federal Rules of Civil Procedure provide tools for a court to adjust the discovery time outlined by Rule 26, and 'if

---

[5] The deliberative process privilege "was fashioned in cases where the governmental decision making process is collateral to the plaintiff's suit," and *does not apply* when, as here, the government's decision-making process is central to the case. *See In re Subpoena Duces Tecum,* 145 F.3d 1422, 1424 (D.C.Cir.), *modified,* 156 F.3d 1279 (D.C.Cir.1998); *accord United States v. AT & T,* 524 F.Supp. 1381, 1389-90 (D.D.C.1981). Moreover, even if the privilege did apply here, it cannot serve as blanket shield to hide every relevant document that the government does not want to produce. Rather, when applicable, the deliberative process privilege allows the government only to withhold from disclosure specific pre-decisional, deliberate portions of documents reflecting "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case,* 121 F.3d 729, 737 (D.C.Cir.1997). In short, the privilege would never shield documents that explain why the government failed to meet its obligations under law. Those documents are not deliberative – they reflect day-to-day operational activities – and go to the very heart of this case. Furthermore, even if the government were to properly assert the privilege for a discrete subset of documents, any such assertion always "may be overcome by a showing of sufficient need, considering the relevance of the evidence sought, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by the government." *Elkins v. D.C.*, 250 F.R.D. 20, 27 (D.D.C. 2008); *see In re Sealed Case,* 121 F.3d at 737-38.

7

warranted, to expedite the time for responding to the discovery sought.'") (quoting *Physicians Interactive v. Lathian Sys., Inc.*, No. 03-cv-1193, 2003 WL 23018270, at *4 (E.D. Va. Dec. 5, 2003)).  Not surprisingly, such "[m]otions for expedited discovery are routinely considered either during a court's consideration of motions for a preliminary injunction or temporary restraining order, or directly before such motions in order to prepare for a preliminary injunction argument." *ForceX, Inc. v. Tech. Fusion, LLC*, No. 11-cv-88 (TEM), 2011 WL 2560110, at *5 (E.D. Va. June 27, 2011).  Those are, of course, precisely the circumstances presented here.

"In the absence of a specific standard delineated in the Federal Rules and in the Fourth Circuit, courts have considered two different standards in evaluating discovery motions, one applying modified preliminary injunction factors and another [a] 'reasonableness,' or 'good cause' test." *Id.* at *5.  Courts in this district have opted for the former standard, "consider[ing] 'the elements of a strong showing of [a likelihood of success on the] merits and [a showing of likely] irreparable harm to the Plaintiff." *Malon v. Franklin Fin. Corp.*, No. 14-cv-671 (HEH) (RCY), 2014 WL 5795730, at *3 (E.D. Va. Nov. 6, 2014) (citing *ForceX*, 2011 WL 2560110, at *5).

**II.     Plaintiffs Should Be Permitted to Conduct Expedited Discovery Here**

Plaintiffs request permission here to conduct limited discovery, on an expedited basis, to assist the Court in fashioning an injunctive remedy to redress Defendants' systemic, and continuing, reporting failures.  As set forth more fully in Plaintiffs' P.I. Motion, and summarized below, Plaintiffs (1) are likely to succeed on the merits of their claim, and (2) are likely to suffer irreparable harm absent relief from this Court.  *See Malon*, 2014 WL 5795730, at *3; *ForceX, Inc.*, 2011 WL 2560110, at *6-7.

*First*, Plaintiffs are likely to succeed on the merits of their claim because Defendants have repeatedly admitted that they failed to comply with their statutory obligations. *See* P.I. Motion at 14-16, ECF No. 12. And, until and unless Defendants consistently comply with those statutory obligations, NICS will remain dangerously incomplete. As a direct result: (a) Plaintiffs remain unable to fulfill their governmental obligation to enforce laws disqualifying certain individuals from possessing or carrying firearms; (b) Plaintiffs cannot fulfill their broader governmental responsibility of protecting the safety and welfare of the public; and (c) individuals whose past convictions legally bar them from possessing guns remain able to pass background checks they should fail, thereafter purchasing and/or carrying guns they clearly should be prevented from obtaining and/or carrying.

This puts innumerable people at risk of serious injury or death. As the DoD Inspector General himself underscored in his 2017 Report, even one "missing . . . final disposition report can have serious, even tragic, consequences." Compl. ¶ 20, ECF No. 1.[6]

*Second*, Plaintiffs and the public will continue to suffer irreparable harm absent injunctive relief due to Defendants' failure to comply with their reporting obligations. Prior to issuing permits or licenses, or returning a firearm, Plaintiffs are required by law to determine whether an applicant's criminal history disqualifies him or her from possessing, carrying and/or retrieving a firearm. Plaintiffs each continuously rely upon the accuracy and completeness of the

---

[6] Defendants nonetheless argue, in their March 5th Memorandum, that Plaintiffs have no standing to bring this suit. (*See* March 5 Memo at 9-14, ECF No. 44.) But Plaintiffs each has standing, because each has sufficiently alleged the requisite injury-in-fact. More to the point, each relies, continuously, on the accuracy and completeness of the information in NICS. Defendants' admitted, and repeated, failures to report convictions and dishonorable discharges directly and specifically interferes with Plaintiffs' ability to perform their governmental responsibilities with respect to the issuance of firearm-related permits and licenses and the return of seized firearms. (*See* Reply Memo. in Support of Motion for Expedited Discovery at 9-12, ECF No. 31.)

NCIC database in performing this governmental responsibility, and thus incur actual harm each time they rely upon NICS databases missing key information due to Defendants' reporting failures. *See* P.I. Motion at 16-18.

Plaintiffs also each have a compelling interest in protecting the safety of the people who live in, work in, and visit their respective cities, and have each enacted laws requiring Plaintiffs to conduct background checks to enforce laws disqualifying certain individuals from possessing, carrying or retrieving a firearm. Defendants' long-standing and substantial failure to report all disqualifying records therefore creates an actual, imminent and ongoing threat to this compelling interest. *See id.* at 18.

Every day that Defendants are not in full compliance with the law, and every background check made through an incomplete database, causes an actual irreparable injury, and poses an imminent threat of irreparable harm to the Plaintiffs and the public. This harm is far from speculative; it is actual, legally cognizable, and ongoing. Plaintiffs are compelled, each and every day, to access and rely upon a database that is admittedly incomplete and inaccurate, to perform their governmental function. *See* Compl. ¶¶ 5, 8, 11-14, 69, 75-91.

The gaps in the NICS database caused by Defendants' long-standing and systemic reporting failures have already played a pivotal role in the deaths of at least twenty-six people, and the wounding of twenty others, in Sutherland Springs, Texas. *See id.* ¶¶ 65-74. Whether the Texas Church Shootings were themselves connected to these Plaintiffs is of no moment. What they evidence is the real-world injuries that can all too easily follow Defendants' failure to follow the law — injuries that are not speculative, but, in fact, tragically all too real. It is thus self-evident that Plaintiffs' requested relief would eliminate the ongoing harm caused by Defendants' reporting failures: a complete and accurate NICS system would ensure that

Plaintiffs are able to perform their governmental responsibilities and legal obligations to determine whether an individual seeking to possess, carry or retrieve a firearm is disqualified from doing so. *See* P.I. Motion at 20.

### III. The Specific Discovery Plaintiffs Seek is Proper Under the APA

The discovery Plaintiffs request is narrowly tailored to uncover information explaining Defendants' failures to comply with their reporting obligations, and how to best remedy those failures. *See* Proposed Interrogatories and Proposed Requests for Production, attached as Exhibits B and C, respectively. Such information will be indispensable at the Preliminary Injunction hearing to allow the Court to craft a comprehensive remedy to cure Defendants' long-term and ongoing non-compliance with law.

As detailed above, while Defendants have openly admitted that decades-long reporting failure, the Administrative Record is silent about the specific *reasons* Defendants' still failed to fulfill those obligations, even after the 1997 OIG Report and the 2015 OIG Report both laid them bare. As shown above, the Administrative Record provided by Defendants provides no information whatsoever about *why* Defendants failed to heed those two reports. The record instead includes hundreds of pages merely reiterating and restating policies and procedures for compliance that were repeatedly ignored. The record provides no information, or analysis, as to *why* those policies and procedures were ignored. These glaring deficiencies in the Administrative Record, absent discovery, render meaningful judicial review difficult, if not impossible.

Given the insufficiency of the Administrative Record, the discovery Plaintiffs request here is entirely appropriate, and fully permitted, under the APA. *See, e.g.*, *Axiom Resources Mgmt. v. United States*, 564 F.3d 1374, 1382 (Fed. Cir. 2009) (extra-record evidence is permitted

"if the existing record is insufficient to permit meaningful review consistent with the APA"); *Hill Dermaceuticals v. FDA*, 709 F.3d 44 (D.C. Cir. 2013) (extraneous evidence allowed "where the administrative record itself is so deficient as to preclude effective review."); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) ("When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question."); *Boston Redevelopment Auth. V. Nat'l Park Serv.*, 125 F. Supp. 3d 325, 330 (D. Mass. 2015) *aff'd*, 838 F.3d 42 (1st Cir. 2016) ("Courts have also suggested that limited discovery may be necessary when a plaintiff shows that it will find material in the agency's possession indicative of an incomplete record.") (internal citations and quotations omitted).

Plaintiffs' proposed discovery here therefore seeks targeted information regarding: (1) the specific reasons for Defendants' failures to comply with their reporting obligations; (2) the entity Defendants' efforts to comply with their reporting obligations since Defendant DoD published each of its 1997, 2015 and 2017 OIG reports admitting widespread and substantial reporting failures; and (3) what is required to remedy the entity Defendants' failures. Depositions are then sought from each of the Defendants to obtain the testimony likely necessary to flesh out and explain whatever documents will be produced, and whatever interrogatory answers will be provided, by the entity defendants.

This information is indispensable for Plaintiffs to be able to secure appropriate injunctive relief from this Court. And, because each passing day presents further opportunities for crimes to be committed with firearms obtained by dangerous individuals who should have been, but were not, prohibited from purchasing, carrying or retrieving them, *see* P.I. Motion at 18, ECF No. 12, the discovery sought by Plaintiffs should clearly proceed on an expedited basis. *See Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565-66 (S.D.N.Y. July 26, 2004)

(allowing expedited discovery where the subpoenaed information—including the identity of the proper defendants—is "centrally needed for plaintiffs to advance their . . . claims."); *Physicians Interactive*, 2003 WL 23018270, at *4 ("Courts have held that expedited discovery is warranted when some unusual circumstances or conditions exist that would likely prejudice the party if they were required to wait the normal time.") (internal quotations omitted).

Moreover, in light of the statutory requirement that the entity defendants provide criminal disposition information to the Attorney General "not less frequently than quarterly," 34 U.S.C. § 40901(e)(1), expedited discovery is needed to ensure that appropriate relief can be afforded in time to prevent the Defendants from being in violation of their duties for yet another quarter. A timetable indicating Congress's intent as to the speed with which the agency should act is a weighty factor in determining whether agency action has been unreasonably delayed. *See Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"); *see also Aslam v. Mukasey*, 531 F. Supp. 2d 736 (E.D. Va. 2008) (applying *TRAC* factors in ordering measures to expedite processing of name check by CIS).

## CONCLUSION

Given Plaintiffs' targeted and limited discovery requests, and their strong showing — even at this early stage of litigation — of a likelihood of success on the merits and of irreparable harm, this Court should grant Plaintiffs' Motion for Expedited Discovery.

March 12, 2018                                    Respectfully submitted,

                                          Kenneth W. Taber (admitted *pro hac vice*) (Lead counsel)
                                          Matthew F. Putorti (admitted *pro hac vice*)
                                          Nicholas M. Buell (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036
Phone: 212.858.1000
Fax: 212.858.1500
kenneth.taber@pillsburylaw.com
matthew.putorti@pillsburylaw.com
nicholas.buell@pillsburylaw.com

/s/ Laura B. LoBue
Matthew J. MacLean (VSB No. 44304)
Laura B. LoBue (VSB No. 74699)
Jeetander T. Dulani (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Phone: 202.663.8000
Fax: 202.663.8007
matthew.maclean@pillsburylaw.com
laura.lobue@pillsburylaw.com
jeetander.dulani@pillsburylaw.com

*Attorneys for all Plaintiffs*

Eric Proshansky (admitted *pro hac vice*)
Melanie C.T. Ash (admitted *pro hac vice*)
ZACHARY W. CARTER, CORPORATION
COUNSEL OF THE CITY OF NEW YORK
NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007
Phone: 212.356.2032 / 212.356.2276
Fax: 212.356.2038
eproshan@law.nyc.gov
mash@law.nyc.gov

*Attorneys for Plaintiff the City of New York*

Sozi Pedro Tulante (pro hac vice forthcoming)
Marcel S. Pratt (pro hac vice forthcoming)
Eleanor N. Ewing (pro hac vice forthcoming)
Benjamin H. Field (pro hac vice forthcoming)
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
(215) 683-5000
sozi.tulante@phila.gov
marcel.pratt@phila.gov
eleanor.ewing@phila.gov
benjamin.field@phila.gov

*Attorneys for Plaintiff the City of Philadelphia*

Dennis J. Herrera (admitted *pro hac vice*)
Yvonne R. Mere (admitted *pro hac vice*)
Owen J. Clements (admitted *pro hac vice*)
SAN FRANCISCO CITY ATTORNEY'S OFFICE
Fox Plaza, 1390 Market Street, 7th Floor
San Francisco, CA 94102-5408
Phone: 415.554.3874
Fax: 415.437.4644
yvonne.mere@sfcityatty.org
owen.clements@sfcityatty.org

*Attorneys for Plaintiff the City and County of San Francisco*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of March, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Dennis Carl Barghaan, Jr.
>United States Attorney's Office
>2100 Jamieson Ave
>Alexandria, VA 22314
>dennis.barghaan@usdoj.gov

And I hereby certify that I will cause the foregoing to be sent by certified U.S. mail and email to the following non-filing user:

>Daniel Halainen
>Trial Attorney, Federal Programs Branch
>U.S. Department of Justice, Civil Division
>20 Massachusetts Avenue, NW
>Washington, DC 20530
>daniel.halainen@usdoj.gov

/s/ Laura B. LoBue
Laura B. LoBue (VSB No. 74699)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Phone: 202.663.8000
Fax: 202.663.8007
laura.lobue@pillsburylaw.com