# EXHIBIT A



Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW | Washington, DC 20036 | tel 202.663.8000 | fax 202.663.8007

Jeetander T. Dulani
tel: 202.663.8383
jeetander.dulani@pillsburylaw.com

March 8, 2018

<u>Via Email</u>

Daniel Halainen, Esq.
Trial Attorney, Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW
Washington, DC 20530

Re:   City of New York v. Department of Defense, No. 17-cv-1464
      (E.D. Va.): Deficiencies in the Administrative Record

Dear Mr. Halainen,

We have now reviewed the Administrative Record that your office provided to us on Monday March 5th, and it confirms our expectation that discovery is indeed necessary here. Despite having had over six weeks to assemble a meaningful Administrative Record that would obviate the need for such discovery, the record actually produced to us overwhelmingly consists of boilerplate policy and instruction documents that provide no information whatsoever about *why* Defendants have, for two decades, failed to meet their reporting obligations. That failure, as you know, is the central substantive issue in this case.

In fact, the vast majority of the nine-hundred and ninety three page Administrative Record is nothing more than documents related to minor revisions of — and not actual compliance, or non-compliance, with — DoD policies, instructions, and guidance:

- They merely address revisions to DoD instructions (5507.07: Timing and Indexing in Criminal Investigations; 5501.11: Fingerprint Card and Final, Disposition Report Submission Requirements) and comments on, and coordination of, revisions to those instructions (DoD OIG-000001-000379);

Daniel Halainen
March 8, 2018
Page 2

- They merely recite updated policies, procedures, checklists, regulations and instructions from the military services and/or DOD regarding fingerprinting and final disposition reporting. (DoD OIG-000570-708; DoD OIG-000712-000950; DoD-OIG-000957-000989).

This instructional paper trail thus only details the policies and procedures that should have been followed, but for decades were not. They provide no information or analysis whatsoever as to *why* those policies and procedures were not followed — something the DoD's own Office of the Inspector General ("DoD OIG") found, in three separate reports, was consistently the case.

There is likewise no discussion in any of those documents about actually repairing this broken system after the DoD OIG's negative findings in 1997, and then again in 2015. Nor is there any post-report discussion in these documents — not until November 2017 — about how the military services actually planned to achieve compliance with those instructions and policies. Those fatal gaps in the Administrative Record — on the very issues at the heart of this litigation — can apparently only be filled through the discovery demands we previously served.

Remarkably, the handful of documents in the Administrative Record that do discuss post-OIG report compliance efforts, all deal exclusively with efforts to be undertaken only after the November 2017 Sutherland Springs tragedy. And, not only is there nothing earlier, what is produced is woefully incomplete:

- There is a January 22, 2018, Memo from the Secretary of the Navy claiming to be the next in a series of steps taken since November 2017 to ensure full compliance by the Navy with criminal justice reporting requirements and timely transfer of information to the FBI. But the prior documents are not included, nor are there any such documents provided following the two prior OIG reports. Indeed, there is no explanation of what compliance efforts were undertaken over the two decades before November 2017, nor any explanation of why nothing effective was done previously. Absent such documents, discovery is plainly appropriate and necessary here.

- There is a February 9, 2018, Practice Directive from the Military Justice Branch of the Marines which purports to implement "interim remedial measures." But the document simply outlines more procedures to be followed, and there is no evidence of any systematic effort to repair long term historical under-reporting, nor any indication that anything was fact cleaned up. The document instead simply

Daniel Halainen
March 8, 2018
Page 3

> advises readers to stay tuned: "[e]xpect and prepare for future remedial measures which may require examination of past cases." (DoD OIG-000932-000937).

- There is a November 17, 2017, Navy memo informing the Director of the Naval Criminal Investigative Service (NCIS) that the Navy planned to conduct audit research on the Navy's reporting process of convicted offenders to the NCIC database. (DoD OIG-000950). But, on February 5, 2018, the Navy apparently decided to defer even considering any such audit until corrective actions were implemented following the December 4, 2017, OIG report. DoD OIG-000952-000955. The Navy apparently did not expect those corrective actions to even be completed until September 2018. DoD OIG-000952. While this glacial pace of corrective action, and open-ended delay in the Navy's planned audit, is disheartening on its own, what is especially notable about this document is the fact that there are no comparable discussions to be found prior to November 2017 anywhere in the Administrative Record we've been provided.

- There is a November 14, 2017, Air Force Memo that purports to launch a review of "ALL closed cases." Yet there are no documents related to that review and, again, no similar such documents produced for the period prior to November 2017. (DoD OIG-000990-000993).

Ultimately, then, all these few documents really highlight is the dearth of meaningful documents in the Administrative Record, and the absence in the Administrative Record of any proof of actual compliance with law.

The only other documents in the Administrative Record offering any insights into Defendants' consistent failure to comply with their statutory obligations to report information regarding the criminal history and dishonorable discharges of members or former members of the Military Services are the three publicly available DOD OIG reports from February 10, 1997, February 12, 2015, and December 4, 2017. (DoD OIG-000380-507; DoD OIG-000515-569). These reports, already detailed at length in our Complaint in this suit, each identify significant reporting deficiencies by the military services. The military services do provide contemporaneous comments that accompany each report, seeking to explain why they had not met their reporting obligations, and promising to take additional steps to ensure that any and all missing fingerprints and final disposition reports would be submitted to the FBI. But, then there are no documents at all in the Administrative Record that follow the 1997 and 2015 OIG reports. There is no explanation provided for why those promises were not kept, nor any indication of any concrete efforts to keep them.

Daniel Halainen
March 8, 2018
Page 4

      To the contrary, the December 2017 OIG report makes it plain that the services' reporting problems were *never* fixed, and that, twenty years after the DoD OIG's first investigation, there were still enormous numbers of missing fingerprint cards and final disposition report throughout the DoD. (DoD OIG 000429). Why was that? The Administrative Record offers no explanation at all. The Administrative Record is instead completely silent as to what was discussed, proposed, and done by the services and DoD during the many years between each OIG report. (There was an eighteen year gap between the first and second OIG report and a nearly three year gap between the second and third OIG report.)

      Because there is thus no information in the Administrative Record about *why* the services failed to improve their reporting in the interim years, discovery on that critical issue now appears necessary.

      Even more puzzling, however, is the stark contrast between this empty Administrative Record and the detailed information now contained in the declaration of Grant A. Fleming that DoD recently filed. (ECF No. 44-1, Declaration of Grant. A. Fleming.) The Fleming Declaration details, for example, how the Army was apparently able to complete an initial mass submission of missing data to the FBI in just twelve days. (Fleming Decl. at ¶¶ 12-16.)

      But what about the other services? Neither the Administrative Record nor the Fleming Declaration reveal any similar mass submissions. Why not? The Administrative Record certainly provides no answer. Nor does the Administrative Record contain any documents from the Army's working group, no information about its review process, and no information at all about the Army's recent submissions to the FBI. Nor are there any documents in the Administrative Record explaining why the Army's ongoing efforts apparently dwarf what the other services have done.

        \*                \*                \*

      Given the Government's certification that the Administrative Record is already "complete", despite the severe deficiencies in that record identified above, we now plan on Monday to renew our application for expedited discovery. We will do so in accordance with the timetable requested by the Court — unless we receive your written assurance, by the close of business Friday, that, within five days of this letter, you will supplement the Administrative Record with all of the following information:

- Documents detailing all compliance efforts that were actually undertaken by DoD and each of the services before November 2017 — including documents explaining why those efforts failed to be effective.

Daniel Halainen
March 8, 2018
Page 5

- Documents detailing what was discussed, proposed, and actually done by each of the services and DoD to correct their compliance deficiencies identified by OIG during the years between each of the OIG reports.

- Documents detailing the Army's working group compliance efforts, actions, and results from November 2017 to present, and all similar compliance efforts, actions and results by the other services, during that same period.

- Copies of the draft Department of the Navy Instruction (referenced in DoD OIG 000709) on reporting of Criminal Justice Information and related communications.

- Documents detailing any ongoing coordination of such compliance efforts with the other services and the Secretary of Defense referenced in DoD OIG 000709.

- The unredacted Navy timetable reproduced in DoD OIG 000955.

- Any other documents and communication related to why full compliance was not achieved prior to the December 4, 2017 OIG Report.

We look forward to our telephonic meet and confer Friday at 3 pm to discuss these matters live.

Sincerely,

*[signature]*

Jeetander T. Dulani
Counsel

cc: Dennis C. Barghaan, Jr.