**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

---

THE CITY OF NEW YORK; THE CITY OF
PHILADELPHIA; and THE CITY AND
COUNTY OF SAN FRANCISCO;

        *Plaintiffs,*

   v.

THE UNITED STATES DEPARTMENT OF
DEFENSE; *et al.*;

        *Defendants.*

Civil Action No.: 1:17-cv-01464
Hon. Claude M. Hilton
Hon. Michael S. Nachmanoff

---

**PLAINTIFFS' MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION
AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

I.   Plaintiffs Each Have Standing .............................................................................3

II.  Plaintiffs Properly Allege "Agency Inaction" That Can Be Challenged under the APA .........8

III. Defendants Incorrectly Seek to Apply the Writ of Mandamus Standard..............................11

IV.  The Court Should Grant Plaintiffs' Motion for a Preliminary Injunction.............................13

    A.   Plaintiffs' Clear and Convincing Probability of Success on the Merits.......................16

    B.   Plaintiffs Will Continue to Suffer Irreparable Harm Absent Relief ...........................16

    C.   The Balance of the Hardships and the Public Interest Warrants the Relief
        Requested by Plaintiffs.............................................................................17

4813-8490-9914

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alabama-Coushatta Tribe of Texas v. United States*,
   757 F.3d 484 (5th Cir. 2014) ................................................9

*In re Am. Fed'n of Gov't Emps., AFL-CIO*,
   790 F.2d 116 (D.C. Cir. 1986) ...............................................19

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ...............................................8

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ...............................................8

*In re City of Va. Beach*,
   42 F.3d 881 (4th Cir. 1994) ...............................................19

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ...............................................8

*Clarke v. Sec. Indus. Ass'n*,
   479 U.S. 388 (1987) ...............................................12

*Cmty. Nutrition Inst. v. Young*,
   773 F.2d 1356 (D.C. Cir. 1985) ...............................................19

*Coleman v. Miller*,
   307 U.S. 433 (1939) ...............................................4

*Cornwell v. Sachs*,
   99 F. Supp. 2d 695 (E.D. Va. 2000) ...............................................15

*County of Los Angeles v. Davis*,
   440 U.S. 625 (1979 ...............................................18

*Wyoming ex rel. Crank v. U.S.*,
   539 F.3d 1236 (10th Cir. 2008) ...............................................4

*Virginia ex rel. Cuccinelli v. Sebelius*,
   656 F.3d 253 (4th Cir. 2011) ...............................................4

*De Beers Consol. Mines v. United States*,
   325 U.S. 212 (1945) ...............................................21

4813-8490-9914

*Dreher v. Experian Informational Sols., Inc.*,
  856 F.3d 337 (4th Cir. 2017) ...........................................................................5

*East Tennessee Nat'l Gas Co. v. Sage*,
  361 F.3d 808 (4th Cir. 2004) ..........................................................................21

*Fanin v. United States Dep't of Veterans Affairs*,
  572 F.3d 868 (11th Cir. 2009) ........................................................................18

*Federal Election Comm'n v. Akins*,
  524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) .....................................7

*Flue-Cured Tobacco Corp. Stabilization Corp. v. EPA*,
  313 F.3d 852 (4th Cir. 2002) ..........................................................................11

*Friends of Animals v. Ashe*,
  174 F. Supp. 3d 20 (D.D.C. 2016) ..................................................................10

*Friends of Animals v. Jewell*,
  828 F.3d 989 (D.C. Cir. 2016) ......................................................................5, 7

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006) ..........................................................................10

*Giddings v. Chandler*,
  979 F.2d 1104 (5th Cir. 1992) ........................................................................12

*Golden & Zimmerman, LLC v. Domenech*,
  599 F.3d 426 (4th Cir. 2010) ..........................................................................10

*Grand Canyon Air Tour Coal. V. FAA*,
  154 F.3d 455 (D.C. Cir. 1998) ........................................................................19

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ..........................................................................................7

*Hernandez-Avalos v. Immigration & Naturalization Serv.*,
  50 F.3d 842 (10th Cir. 1995) ..........................................................................12

*Ibrahim v. Chertoff*,
  529 F. Supp. 2d 611 (E.D.N.C. 2007) .............................................................11

*Kennecott Utah Copper Corp. v. U.S. Det. Of Interior*,
  88 F. 3d 1191 (D.C. Cir. 1996) .......................................................................18

*King v. Sebelius*,
  997 F. Supp. 2d 415 (E.D. Va. 2014)..............................................................12

*Kirwa v. United States Department of Defense*,
    --- F. Supp. 3d ---, 2017 WL 4862763 (D.D.C. Oct. 25, 2017) ........................................... 21

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................................. 8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................................. 3

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
    123 F. Supp. 3d 810 (E.D. Va. 2015) ................................................................................. 6

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
    722 F.3d 591 (4th Cir. 2013) ............................................................................................. 15

*Mgmt. Ass'n for Private Photogrammertric Surveyors v. United States*,
    467 F. Supp. 2d 596 (E.D. Va. 2006) ............................................................................... 12

*Moore v. Millenium Acquisitions*,
    No. 1:14-cv-01402, 2016 WL 8730673 (E.D. Cal. 2016) ................................................. 19

*Murray Energy Corp v. Adm'r of EPA*,
    861 F.3d 529 (4th Cir. 2017) ............................................................................................... 9

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................................... 17

*Norton v. Southern Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ......................................................................................................... 9, 11

*Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*,
    879 F.3d 339 (D.C. Cir. 2018) ............................................................................................ 4

*People for the Ethical Treatment of Animals, Inc. v. U.S. Fish & Wildlife Serv.*,
    130 F. Supp. 3d 999 (E.D. Va. 2015) ................................................................................. 9

*Powell v. McCormack*,
    395 U.S. 486 (1969) ........................................................................................................... 18

*Printz v. United States*,
    521 U.S. 898 (1997) ............................................................................................................. 6

*Project Vote/Voting for Am., Inc. v. Long*,
    752 F. Supp. 2d 697 (E.D. Va. 2010) ................................................................................. 7

*Pursuing America's Greatness v. Fed. Election Comm'n*,
    831 F.3d 500 (D.C. Cir. 2016) .......................................................................................... 18

*U.S. ex rel. Rahman v. Oncology Assocs.*,
   198 F.3d 489 (4th Cir. 1994) .........................................................................................20

*Raub v. Campbell*,
   785 F.3d 876 (4th Cir. 2015) ...........................................................................................8

*Salt Inst. v. Leavitt*,
   440 F.3d 156 (4th Cir. 2006) ...........................................................................................6

*Salt Institute v. Thompson*,
   345 F. Supp. 2d 589 (E.D. Va. 2004) ..............................................................................8

*Sierra Club v. U.S. Dep't of Energy Support Ctr.*,
   No. 11-cv-41, 2011 WL 3321296 (E.D. Va. July 29, 2011) .................................................8

*Spokeo, Inc. v. Robbins*,
   136 S. Ct. 1540 (2016) ............................................................................................3, 5, 7

*Telecommunications Research and Action Center* [*TRAC*] *v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) .........................................................................................16

*In re United Mine Workers of Am. Int'l Union*,
   190 F.3d 545 (D.C. Cir. 1999) .......................................................................................19

*United States v. Fed. Mar. Comm'n*,
   694 F.2d 793 (D.C. Cir. 1982) .........................................................................................3

*Village of Bald Head Island v. U.S. Army Corps of Engineers*,
   714 F.3d 186 (4th Cir. 2013) ......................................................................................9, 11

*W. Indus.-North, LLC v. Lessard*,
   No. 1:12-cv-177, 2012 WL 966028 (E.D. Va. 2012)........................................................13

*Wash. Utilities & Transp. Com'n v. F.C.C.*,
   513 F.2d 1142 (9th Cir. 1975) ..........................................................................................4

*Wilson v. Grp. Hospitalization & Med. Servs., Inc.*,
   791 F. Supp. 309 (D.D.C. 1992) ....................................................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .........................................................................................................16

v

## Statutes and Code

United States Code
    Title 5, Section 701, *et seq.*..................................................................................................1
    Title 5, Section 706(1)..........................................................................................8, 11, 12
    Title 34, Section 40901........................................................................................................6
    Title 34, Section 40901(e)(1)(C).........................................................................................6

California Penal Code
    Section 13730......................................................................................................................4
    Section 18250......................................................................................................................4
    Sections 33850-33865 ........................................................................................................4

New York Penal Law
    Section 400.00....................................................................................................................4

Pennsylvania Statute
    Title 18, Section 6019.........................................................................................................4

## Rules and Regulations

Code of Federal Regulations
    Title 28, Section 25.6(d)......................................................................................................5
    Title 28, Section 25.6(j)(1) ...........................................................................................5, 13

Rules of the City of New York
    Title 38, Chapter 3.............................................................................................................4
    Title 38, Chapter 5.............................................................................................................4

## Other Authorities

Defense Manpower Data Center, *available at*
    https://www.dmdc.osd.mil/appj/dwp/dwp_reports.jsp.......................................................14

House of Representatives
House Report No. 103-344, 103rd Cong. 1st Sess. p. 8, 1993 U.S. Code Cong.
& Admin. News pp. 1984, 1985) .........................................................................................7

4813-8490-9914

Plaintiffs the City of New York, the City of Philadelphia and the City and County of San Francisco (collectively, "Plaintiffs"), in further support of their December 29, 2017, Motion for a Preliminary Injunction (Dkt. 12), and in opposition to Defendants' March 5, 2018, Motion to Dismiss (Dkt. 44 and 45), state as follows:

## PRELIMINARY STATEMENT

It is stunning that Defendants — having failed for over two decades to comply with their reporting obligations under Federal law — apparently *only began t*o correct that unlawful behavior *after* the November 5, 2017, Texas Church Shootings in Sutherland Springs.  They offer no excuse for that prior two-decade failure.  Nor do they even pretend, four months later, that their compliance with law is now complete — because it is not.

While Defendants say the Army has now submitted over 32,000 names of disqualified individuals to the FBI, they point to no parallel mass submissions by the Navy, the Marines, or the Air Force.  Nor do they anywhere suggest the Army is now in full compliance with law. Accordingly, four months after the Sutherland Springs tragedy, all four service branches still remain in violation of Federal law.

So do Defendants concede liability here?  Hardly.  They instead argue in their March 5th filings that Plaintiffs have no standing to complain, and that this Court has no power to hold them accountable (absent suit brought by the FBI) for their unlawful conduct.

Defendants' disturbing attempt to place themselves above the law cannot prevail.  As detailed below, Defendants' two-decade failure to perform the purely ministerial act of reporting criminal convictions and dishonorable discharges to the FBI is, in fact, fully reviewable "agency inaction" under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*.  Defendants therefore

4813-8490-9914

can, and indeed must, be called to task for failing to meet that legal obligation — an obligation deeply rooted in the paramount objective of keeping the American public safe.

More specifically, none of Defendants' contrary arguments can withstand scrutiny:

- These three municipal Plaintiffs, who rely on the integrity of the NICS database every day, suffer the requisite injuries-in-fact to have standing to sue (Point I, *infra*).

- Plaintiffs' APA challenge to Defendants' failure to perform statutorily mandated, non-discretionary actions — the reporting of information to the FBI that disqualifies certain individuals from obtaining or possessing firearms — is not a "programmatic attack," but rather a challenge to purely ministerial "agency inaction."  (Point II, *infra*).

- Defendants' attempt to use mandamus principles to avoid Plaintiffs' APA claim necessarily fails.  (Point III, *infra.*).

- Defendants' attempt to portray this case as nothing more than an intra-agency squabble between the FBI and Defendants is preposterous — and clearly contrary to Congressional intent.  (Point III, *infra*).

- Plaintiffs readily satisfy each of the elements required to secure a preliminary injunction.  (Point IV, *infra.*).

Finally, this matter is far from moot.  Despite the fact that Defendants have already had four months since the Sutherland Springs shootings to correct this problem, no service branch other than the Army has yet made a mass submission of missing names to the FBI.  What we now see instead are:  (1) compliance audits announced, and then indefinitely postponed (by the Navy); (2) the public told to just stay tuned for "future remedial measures which *may* require examination of past cases" (by the Marines); or (3) hollow assurances that there is no need to worry because they're working on it (by the Air Force).  *See* DoD OIG-000932-000938, attached to the accompanying March 19, 2018 Declaration for Laura B. LoBue ("LoBue Decl.") as Exhibit A; DoD OIG-000950-000956, attached to the LoBue Decl. as Exhibit B (emphasis added); March 5, 2018 Declaration of Grant A. Fleming (ECF Nos. 44-1 and 45-45] ¶¶ 36-41 (the "Fleming Decl.").

4813-8490-9914

Accordingly, the need for this suit and, more importantly, for judicial supervision assuring Defendants' compliance with law, is clearer now than ever.

## ARGUMENT

### I.     Plaintiffs Each Have Standing

Plaintiffs each allege concrete injuries-in-fact and, therefore, each have standing to bring this suit.  As Defendants themselves explain, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (Defs. Mem. at 10.)

The source of Plaintiffs' injury-in-fact here is undisputed:  Plaintiffs each regularly access NICS, and/or systems with data populated from NICS, to conduct background checks. Each Plaintiff therefore continuously "relies upon the integrity and completeness of NICS, including the NCIC database," to perform their governmental responsibility of keeping the public safe.  *See* Compl. ¶¶ 22, 28, 29, 33, 34 & 38.  And, each is therefore actually harmed when Defendants' admittedly deficient disclosures leave NICS inaccurate and incomplete.  That database inaccuracy and incompleteness is hardly a "bare procedural violation" (Defs. Mem. at 11); it is a fundamental failure of the very purpose of NICS.

Because Defendants' failure to provide information for inclusion in NICS impairs Plaintiffs' ability to fulfill their governmental legal duties, that creates immediate injury-in-fact, injury the case law clearly deems sufficient to confer standing.  *See e.g., United States v. Fed. Mar. Comm'n*, 694 F.2d 793, 801-02 (D.C. Cir. 1982) ("The purpose of the injury in fact

3

Case 1:17-cv-01464-CMH-MSN   Document 50   Filed 03/19/18   Page 11 of 30 PageID# 765

requirement is achieved when agency action interferes directly and specifically with the governmental responsibilities of the public agency.").[1]

This is not, as Defendants claim, a situation where Plaintiffs' standing is premised upon the "mere existence of inaccurate information in [a] database" without "a *de facto* injury." Defs. Mem. at 12 (quoting *Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*, 879 F.3d 339, 343 (D.C. Cir. 2018)). Plaintiffs have each suffered, and continue to suffer, actual, legally cognizable injury by virtue of Defendants' reporting failures. Defendants' inaction "interferes directly and specifically with [Plaintiffs'] governmental responsibilities" and, more particularly, with Plaintiffs' statute-driven obligations[2] to issue firearm permits and licenses and, where appropriate, return seized firearms, only to those lawfully entitled to have such weapons.

Defendants nonetheless attempt to portray Plaintiffs as merely "seeking to vindicate [their] interests in the health and well-being of [their] citizens [in] a *parens patriae* action." (Defs. Mem. at 10) (internal quotations and citations omitted). Not so. Plaintiffs are not "suing the United States on behalf of their citizens." *See Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 269 (4th Cir. 2011). Plaintiffs instead sue based on their own specific and concrete

---

[1] *See Wyoming ex rel. Crank v. U.S.*, 539 F.3d 1236, 1242 (10th Cir. 2008) ("Wyoming has sufficiently alleged an injury-in-fact because the ATF's interpretation of [sections of the Gun Control Act] interferes with Wyoming's ability to enforce its legal code"); *Wash. Utilities & Transp. Com'n v. F.C.C.*, 513 F.2d 1142, 1149 (9th Cir. 1975) (State regulatory agency had standing in its own right to challenge FCC order; the "injury in fact" requirement was satisfied because plaintiff alleged that the FCC order interfered with plaintiff's ability to discharge a statutorily imposed legal duty, and "it is no bar to [plaintiff's] standing that the line of causation between the FCC order and interference with [plaintiff's] performance of its duties may be attenuated."); *see also Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 269 (4th Cir. 2011) ("when a federal law interferes with a state's exercise of its sovereign 'power to create and enforce a legal code' . . . it inflict[s] on the state the requisite injury-in-fact.") (internal citations omitted); *Coleman v. Miller*, 307 U.S. 433, 441-42 (1939) ("there has been recognition of the legitimate interest [of] public officials and administrative commissions, federal and state, to resist the endeavor to prevent enforcement of statutes in relation to which they have official duties.").

[2] *See* Compl. ¶¶ 22-28 (citing N.Y. Penal Law § 400.00 and 38 R.C.N.Y. chs. 3 & 5), 29-33 (citing 18 P.S. § 6019) & 34-38 (citing Cal. Penal Code §§ 13730, 18250 & 33850-33865).

4

4813-8490-9914

governmental interest in fulfilling their obligations, under the laws of their respective states, to conduct background checks before issuing firearm permits or licenses or returning seized firearms. *See* Compl. ¶¶ 23, 26, 29, 30 & 35.

Moreover, as Defendants themselves readily acknowledge, "a constitutionally cognizable informational injury requires [1] that a person lack access to information to which he is legally entitled *and* [2] that the denial of that information creates a 'real' harm with an adverse effect." (Defs. Mem. at 12) (citing *Dreher v. Experian Informational Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (quoting *Spokeo*, 136 S. Ct. at 1549)).[3]  Both elements are present here.

*First*, Plaintiffs have unquestionably been denied information to which they are entitled by statute.  Defendants' argument that Plaintiffs have no legal entitlement to the information Defendants are required to report (*see* Defs. Mem. at 12) is directly contradicted by the NICS statutory framework itself.  As Defendants themselves admit elsewhere in their brief, Congress specifically decreed that one of the express purposes of NICS is to "[p]rovid[e] information to Federal, state, tribal, or *local criminal justice agencies in connection with the issuance of a firearm-related . . . permit or license*, including permits or licenses to possess, acquire, or transfer a firearm, or to carry a concealed firearm . . . ."  (Defs. Mem. at 5) (quoting 28 C.F.R. § 25.6(j)(1)) (emphasis added).  Indeed, Federal law expressly confers upon Plaintiffs the right to the information contained in NICS.  *See* 28 C.F.R. § 25.6(d) ("The NICS will provide POCs

---

[3]  *See also Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) ("[a] plaintiff suffers sufficiently concrete and particularized informational injury where the plaintiff alleges that:  (1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure.").

4813-8490-9914

[point-of-contact agencies that access and rely on NICS, like Plaintiffs] with electronic access to the system virtually 24 hours each day through the NCIC communication network.").[4]

Defendants, in turn, are unambiguously required by Congressional mandate to submit disqualifying convictions to NICS, and to do so at least quarterly.  *See* 34 U.S.C. § 40901(e)(1)(C) ("[i]f a Federal department or agency . . . has any record of any person demonstrating that the person falls within one of the categories described in subsection (g) or (n) of section 922 of Title 18, the head of such department ***shall***, ***not less frequently than quarterly***, provide the pertinent information contained in such record to the Attorney General") (emphasis added); *see also id.* § 40901(e)(1)(A) ("the Attorney General may secure directly from any department or agency of the United States such information on persons for whom receipt of a firearm would violate subsection (g) or (n) of section 922 of Title 18 or State law, ***as is necessary to enable the system to operate*** . . . .") (emphasis added).

*Second*, Defendants' admitted reporting failures deny Plaintiffs access to information essential to the performance of their governmental responsibilities in issuing, or denying, firearm-related permits and licenses, and in returning seized firearms.  They also impede the very purpose Congress sought to achieve in enacting 34 U.S.C. § 40901:  the reduction of gun violence.  *See* 34 U.S.C. § 40901 (note) (Codification) ("Section was enacted as part of the Brady Handgun Violence Prevention Act"); *Printz v. United States*, 521 U.S. 898, 940 (1997)

---

[4] Defendants' reliance on *Salt Inst. v. Leavitt*, 440 F.3d 156, 159 (4th Cir. 2006) — to claim that 34 U.S.C. § 40901 "does not create rights in Plaintiffs" (*see* Defs. Mem. at 12) — is thus entirely misplaced.  Unlike the statute at issue in *Salt Inst.*, which simply required the Office of Management and Budget to draft guidelines concerning information quality and specified what those guidelines should contain, the statutory framework at issue here expressly confers legal rights to local governments like these three Plaintiffs.

Plaintiffs' clearly cognizable right to access the information in NICS therefore makes this case analogous to *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, 123 F. Supp. 3d 810, 817-18 (E.D. Va. 2015) — also cited by Defendants (Defs. Mem. at 12) — in which this Court determined that the plaintiff had adequately alleged an "injury-in-fact" because the statute at issue provided the plaintiff with a right to the information at issue.

("The Brady Act was passed in response to what Congress described as an 'epidemic of gun violence.'") (quoting H.Rep. No. 103-344, 103rd Cong. 1st Sess. p. 8, 1993 U.S. Code Cong. & Admin. News pp. 1984, 1985) (Stevens, J. dissenting).

"[A] plaintiff seeking to demonstrate that it has information standing generally 'need not allege any additional harm beyond the one Congress has identified.'" *Friends of Animals*, 828 F.3d at 992 (D.C. Cir. 2016) (citing *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1544 (2016)). Plaintiffs here easily meet that requirement.

In addition, the Sutherland Springs shootings tragically illustrate how even one missing record can have catastrophic, deadly consequences. The Department of Defense's own Inspector General concurs: "[a]ny missing . . . final disposition report can have serious, even tragic, consequences." P.I. Motion, Ex. J. Plaintiffs have, accordingly, more than adequately alleged "that the statute confers upon [them] an individual right to information, and then that the defendant caused a concrete injury to the plaintiff in violation of that right." *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 702 (E.D. Va. 2010).[5]

As for Defendants' final standing argument — that Plaintiffs' injury is simply too "speculative" to confer standing (Defs. Mem. at 13-14) — the cases Defendants cite are all easily distinguished from the circumstances presented here. In each of Defendants' cited cases, the plaintiffs proffered evidence of only past, or speculative potential future, injury — without

---

[5] *See also Federal Election Comm'n v. Akins,* 524 U.S. 11, 19–20, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (holding that inability to procure information to which Congress has created a right qualifies as concrete injury satisfying Article III's standing requirement); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) ("[I]njury to [a] statutorily created right to truthful . . . information" can constitute "injury in fact.").

evidence of *actual, ongoing* harm.[6]  Here, by contrast, Plaintiffs' injury is neither confined to the

past nor merely imagined in the future; it is actual — and ongoing — today and every day.

Plaintiffs are compelled, every day, to rely upon a NICS database that Defendants admit

is incomplete and inaccurate to perform their governmental function.  This Court knows that

NICS database is incomplete and inaccurate because Defendants have repeatedly admitted that.

*See* Compl. ¶¶ 5, 8, 11-14, 69, 75-84.  And, this Court also knows that the gaps in the NICS

database resulting from Defendants' long-standing and systemic disclosure failures played a

pivotal role in the deaths of at least twenty-six people and the wounding of twenty others in

Sutherland Springs.  *See id.* ¶¶ 65-74.

Whether those Texas Church Shootings, in particular, were connected to these three

Plaintiffs is of no moment.  What they evidence is the concrete injuries that can readily follow

Defendants' failure to obey the law.  Such injuries are neither speculative nor academic; they are,

tragically, all too real.

## II.      Plaintiffs Properly Allege "Agency Inaction" That Can Be Challenged under the APA

Defendants concede, as they must, that claims to compel agency action under 5 U.S.C. §

706(1) are proper when "an agency [has] failed to take a *discrete* agency action that it is *required*

---

[6]  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (past wrongs, unaccompanied by any continuing, present adverse effects, are insufficient to confer standing); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401, 411 (2013) (Respondents' "theory of *future* injury is too speculative" where respondents offered no evidence their communications were currently being monitored); *Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) (same); *Salt Institute v. Thompson*, 345 F. Supp. 2d 589, 599 (E.D. Va. 2004) (plaintiffs failed to contend they were injured by dissemination of information that *might* cause consumers to reduce their consumption of salt); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-64 (1992) (allegations of injury "at some indefinite future time" are insufficient to confer standing); *Raub v. Campbell*, 785 F.3d 876, 886 (4th Cir. 2015) ("past wrongs do not in themselves amount to [a] real and immediate threat of injury") (internal quotations and citations omitted); *Sierra Club v. U.S. Dep't of Energy Support Ctr.*, No. 11-cv-41, 2011 WL 3321296, at *5 (E.D. Va. July 29, 2011) (allegations of injuries based "on climate changes associated with greenhouse gas emissions that have caused or purportedly will cause generalized environmental impacts" were too speculative, as they did not sufficiently allege that those injuries were the result of defendants' contracts to purchase fuel that may have been derived in part from recovered crude oil).

4813-8490-9914

*to take.*" *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (Defs. Mem. at 15). Nevertheless, Defendants pretend that "Plaintiffs fail to allege an 'agency action' that they seek to compel," that "Plaintiffs fail to identify a specific and discrete agency action that they seek to compel," and that "[n]otably absent from the complaint are any allegations of an identifiably specific and discrete action withheld." (Defs. Mem. at 14, 16.)

Defendants know better. The Complaint here unambiguously asks that Defendants be compelled to take the discrete, purely ministerial agency action of reporting to the Attorney General, not less than quarterly, all disqualifying records that Defendants are required by Federal statute to report. Compl. ¶¶ 55-64 & 92-104. There can be no legitimate confusion about that request.

Defendants then go on to argue that what Plaintiffs advance here is a "broad programmatic attack," for which APA judicial review is not permitted. (Defs. Mem. at 15-18.) Defendants are wrong there as well. Impermissible "programmatic attacks" are something entirely different, as the cases Defendants themselves cite (*see* Defs. Mem. at 15-18) make clear. Those cases show that a "programmatic attack" is, for example, a challenge to:

(1)    implementing a land use plan that seeks to balance competing land uses, *Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004);

(2)    performing the long-term maintenance of a river navigation channel involving ongoing environmental determinations, *Village of Bald Head Island v. U.S. Army Corps of Engineers*, 714 F.3d 186 (4th Cir. 2013);

(3)    continuously evaluating the potential employment impact of the administration and enforcement of a federal environmental statute, *Murray Energy Corp v. Adm'r of EPA*, 861 F.3d 529 (4th Cir. 2017);

(4)    issuing discretionary permits related to endangered species, *People for the Ethical Treatment of Animals, Inc. v. U.S. Fish & Wildlife Serv.*, 130 F. Supp. 3d 999 (E.D. Va. 2015);

(5)    managing the natural resources on Indian tribe land, *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484 (5th Cir. 2014);

9

4813-8490-9914

(6)     developing a strategy to manage and oversee wild horses and burros on public land, *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13 (D.C. Cir. 2006); or

(7)     issuing discretionary permits to import sport-hunted endangered animals, *Friends of Animals v. Ashe*, 174 F. Supp. 3d 20 (D.D.C. 2016).

Each of these cases cited by Defendants thus involved government agencies making discretionary decisions, after evaluating multiple factors and balancing multiple competing interests to achieve a broad statutory purpose.  Here, entirely the opposite is the case.  Defendants are statutorily required to perform a very specific, purely ministerial action:  they simply must report, at least quarterly, the identities of disqualified individuals.  Defendants are not required to *balance* any competing interests.  If a current or former service member has a disqualifying record, Defendants must report it — period.

Plaintiffs ask only that the Court compel Defendants here to perform the discrete, non-discretionary and statutorily required task of reporting all disqualifying convictions and dishonorable discharges.  Plaintiffs then ask that Defendants confirm they have done so.  Defendants will be the ones to develop their own compliance plan and to then provide monthly reports to the Court.

Defendants next argue that "the reporting of information from one agency to another does not constitute 'agency action' within the meaning of the APA" (Defs. Mem. at 19), but provide no basis for that assertion. Certainly, none of the cases Defendants cite support that proposition. Defendants' reliance, for example, on the Fourth Circuit's decision in *Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426 (4th Cir. 2010) — for the proposition that "a federal agency's release of information on 'what violates the law'" is not actionable — misses the point entirely. The transmitted "information" in that case was merely a reference guide of frequently asked

10

questions about a federal firearms statute.  It was not even remotely analogous to the kind of information at issue here.

Neither was the "information" at issue in *Flue-Cured Tobacco Corp. Stabilization Corp. v. EPA*, 313 F.3d 852, 858-62 (4th Cir. 2002) comparable to that at issue in the instant case. That case instead involved a report that classified environmental tobacco smoke as a known human carcinogen.  It did not involve information transmitted between government agencies that was expressly required, by statute, to be transmitted for the use and benefit of third-parties.

Accordingly, Plaintiffs have indeed sufficiently alleged agency inaction here properly subject to review under the APA.

## III.   Defendants Incorrectly Seek to Apply the Writ of Mandamus Standard

Defendants argue that an APA claim for § 706(1) relief is effectively a writ of mandamus and that Plaintiffs' claim therefore fails because Defendants owe *no duty* to Plaintiffs — one of the required elements for mandamus.  (Defs. Mem. at 2, 21-23.)  But, those courts that have compared § 706(1) APA relief to a mandamus application do so only to say that § 706(1) requires the challenged act be a discrete agency action *required* to be taken.[7]  Nothing in the case law suggests that an APA claim must also satisfy the mandamus requirement that the underlying

---

[7]   *See, e.g., Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("A second point central to the analysis of the present case is that the only agency action that can be compelled under the APA is action legally *required*. This limitation appears in § 706(1)'s authorization for courts to 'compel agency action *unlawfully* withheld.' In this regard, the APA carried forward the traditional practice prior to passage, when judicial review was achieved through use of the so-called prerogative writs—principally writs of mandamus . . . ."); *Village of Bald Head Island v. U.S. Army Corps of Engineers*, 714 F.3d 186, 195 (4th Cir. 2013) ("Moreover, § 706(1) only authorizes the compulsion of agency action *that is legally required.*  In this sense . . . § 706(1) is like the mandamus remedy . . . ."); *Ibrahim v. Chertoff*, 529 F. Supp. 2d 611 (E.D.N.C. 2007) ("Like the Mandamus Act, the APA allows courts to courts to compel legally mandated government actions. Such claims under the APA must pertain to actions the government is required by law to accomplish and are subject to the same standard as those under the Mandamus Act.").

4813-8490-9914

duty be owed directly to the plaintiff.  To the contrary, courts have repeatedly held that a plaintiff

who satisfies the "zone-of-interest" standing requirement for § 706(1) need not also show the

agency owed it some separate duty.[8]

Here, in addition to meeting the injury-in-fact standard for jurisdictional standing, *see*

*supra* Section I, Plaintiffs also meet that zone-of-interest test:  "In essence, the zone of interests

test is an aid to determining whether a plaintiff is a 'person adversely affected or aggrieved by

agency action within the meaning of a relevant statute.  The test requires, at the broadest level,

that a plaintiff demonstrate that the interest he seeks to protect is 'arguably within the zone of

interests to be protected or regulated by the statute or constitutional guarantee in question.'"

*Mgmt. Ass'n for Private Photogrammertric Surveyors v. United States*, 467 F. Supp. 2d 596,

605-06 (E.D. Va. 2006) (citations omitted).[9]

As explained above, *see supra* Section I, local governments like these three Plaintiffs are

clearly among those specifically intended to benefit from the NICS database system.

Defendants' contrary contention — that "any duty Defendants owe is to the FBI, not to

Plaintiffs" (Defs. Mem. at 2, 12 & 22) — erroneously conflates the specified *path* of disclosure

with the substantive public *duty* itself.  Defendants seem to forget that the very reason they are

obligated to make these disclosures is to facilitate the national background check system, a

---

[8]  *See, e.g., Hernandez-Avalos v. Immigration & Naturalization Serv.*, 50 F.3d 842, 846 (10th Cir. 1995)
("[B]ecause mandamus is properly sought where government officials 'owe a duty' to the plaintiff, and because a
'duty' is 'owed' in the administrative context if the plaintiff's interest is within the 'zone of interests' protected by
the underlying statute, all a plaintiff seeking mandamus in administrative litigation need show is that the interest
he seeks to vindicate falls within the statutory zone of interests."); *Giddings v. Chandler*, 979 F.2d 1104, 1110
(5th Cir. 1992) ("[S]tanding under the APA is determined by applying the same 'zone of interest' test as applied
to determine standing in the mandamus context.").

[9]  *See also Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 400-01 (1987) ("The test is not meant to be especially
demanding; in particular there need be no indication of congressional purpose to benefit the would-be plaintiff");
*King v. Sebelius*, 997 F. Supp. 2d 415, 423 (E.D. Va. 2014) ("The Supreme Court has explicitly stated that [the
zone of interest] test is not meant to be especially demanding and that any benefit of the doubt should go to the
plaintiff.").

4813-8490-9914

system designed to be relied upon by Federal Firearm Licensees, by States, and by municipalities like these three Plaintiffs.

To treat this, then, as a duty *only* to the FBI, and to argue that these Plaintiffs are not aggrieved by agency inaction, would turn the entire NICS background check system on its head. Indeed, as noted above, 28 C.F.R. § 25.6(j)(1) makes it clear that one of the essential purposes of NICS is to provide information to "local criminal justice agencies in connection with the issuance of a firearm-related … permit or license."

Finally, as regards mandamus, Defendants admit as they must that "'[m]andamus against a public official'" is indeed appropriate when "'the alleged duty to act involves a mandatory or ministerial obligation which is so plainly prescribed as to be free of doubt.'"  (Defs. Mem. at 21.) That is precisely the situation here:  Defendants are statutorily obligated to perform the ministerial action of reporting all records disqualifying current or former service members from possessing firearms.  Their failure to do so, prior to the APA, would surely have warranted mandamus.

For all of these reasons, Defendants' attempt to use mandamus principles to avoid Plaintiffs' APA claim necessarily fails.

## IV. The Court Should Grant Plaintiffs' Motion for a Preliminary Injunction

Defendants observe, correctly, that "mandatory preliminary injunctions . . . do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief."  *W. Indus.-North, LLC v. Lessard*, No. 1:12-cv-177, 2012 WL 966028, at *1 (E.D. Va. 2012).  But Defendants err when they suggest this is not such a situation.  Indeed, it is difficult to posit more exigent circumstances warranting a mandatory preliminary injunction than those presented here.

4813-8490-9914

The Sutherland Springs shootings vividly illustrate the harm that can follow when a firearm falls into the hands of a single individual whom Congress has deemed too dangerous to possess one.  Defendants' March 5th disclosures in this case now make it possible, for the first time, to "ballpark" the number of disqualified individuals whom Defendants have not yet reported to the FBI.  That "ballpark" number:  **approximately 15,000 unreported disqualified individuals**, as explained below.  Accordingly, Defendants' recent disclosures confirm that these are indeed exigent circumstances.

In the Fleming Declaration filed by Defendants with the Court on March 5th (ECF Nos. 44-1 & 45-1), Defendants reveal that, in November 2017, the Army disclosed to the FBI 32,932 disqualified individuals.  (Fleming Decl. ¶ 18).  That number equates to approximately 4.6% of the Army's 715,819 current active and reserve personnel[10] (though the subset of disqualified individuals obviously spans both current and former Army personnel).  Applying that same 4.6% figure to the 1,203,739 combined active and reserve personnel in the other military branches[11] suggests, then, that there are approximately 55,000 *additional* disqualified military personnel from those other service branches (assuming roughly equivalent disqualification rates in those other service branches).

How many of those 55,000 disqualified individuals are currently missing from the NICS database?  The December 4, 2017, OIG report tells us that the Air Force failed to submit disposition reports in approximately 14% of its cases, the Navy failed to report in approximately 36% of its cases, and the Marine Corps failed to report in approximately 36% of its cases.  *See*

---

[10]  *See* Defense Manpower Data Center, *available at* https://www.dmdc.osd.mil/appj/dwp/dwp_reports.jsp.

[11]  In 2017 the Air Force had 488,454 active and reserve personnel, the Navy had 512,985 active and reserve personnel, and the Marine Corps had 202,300 active and reserve personnel.  *See* Defense Manpower Data Center, *available at* https://www.dmdc.osd.mil/appj/dwp/dwp_reports.jsp.

4813-8490-9914

P.I. Motion, Ex. J.  This then suggests that, *even assuming the Army was already at 100% compliance with its reporting obligations*, which it does not claim to be, there would still be some 15,000 disqualified individuals who have not yet been reported to the FBI by the Air Force (3,146), by the Navy (8,495), and by the Marine Corps (3,350).

This presents an enormous danger to the public at large because *each one* of these individuals is a potential ticking human time-bomb — someone already adjudicated by the military too dangerous to be permitted to own or possess a firearm.  The need to block these 15,000 people from acquiring future firearms thus presents an extraordinarily exigent circumstance.[12]

Defendants also vastly overstate the legal standard to be satisfied to secure such a mandatory preliminary injunction.  Plaintiffs need not show there is "*no doubt as to the probability that they will ultimately prevail at final judgment.*"  (Defs. Mem. at 25) (emphasis in original).  Instead, as this Court itself has noted, a plaintiff seeking a mandatory preliminary injunction must show a "clear and convincing probability of success."  *See Cornwell v. Sachs*, 99 F. Supp. 2d 695, 703-04 (E.D. Va. 2000).

As detailed below, Plaintiffs here can easily establish:  (A) a clear and convincing probability of success on the merits; (B) that they are "likely to suffer irreparable harm" in the absence of such preliminary relief; (C) that the "balance of the hardships tips in [their] favor"; and (D) that "the injunction [they seek] is in the public interest."  *Id.*; *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

---

[12] Defendants' themselves admit that, between November 2017 and February 2018, the records provided to the FBI by the Army alone have resulted in an average of 2 denials of NICS background checks *per day*.  *See* Fleming Decl. ¶ 21.

4813-8490-9914

**A.      Plaintiffs' Clear and Convincing Probability of Success on the Merits**

Because Defendants have already admitted, under oath, their unlawful conduct, *see* P.I.

Motion at 3-4 & 11, Plaintiffs here can readily demonstrate a clear and convincing probability of

success on their request for injunctive relief under the APA.  Tellingly, Defendants do not even

attempt in their moving papers to rebut Plaintiffs' demonstration that they have satisfied all five

of the factors required to compel such agency action under the APA, as set forth in

*Telecommunications Research and Action Center* [*TRAC*] *v. FCC*, 750 F.2d 70, 78 (D.C. Cir.

1984).  *See* P.I. Motion at 15-16.  Defendants instead rely exclusively upon the same three fatally

flawed defenses already debunked above (Defs. Mem. at 25-26) — fatally flawed because:  (1)

Plaintiffs have standing to prosecute this action; (2) Plaintiffs have demonstrated agency inaction

that is properly the subject of an APA claim; and (3) Plaintiffs have established a right to the

remedy sought.  *See supra* Sections I-III.

**B.      Plaintiffs Will Continue to Suffer Irreparable Harm Absent Relief**

Defendants assert that Plaintiffs cannot demonstrate "irreparable harm is *likely* in the

absence of an injunction."  (Defs. Mem. at 26) (emphasis in original).  Defendants' assertion is

puzzling because Plaintiffs have already done far more than that — demonstrating irreparable

harm that is a certainty.  *See* P.I. Motion at 16-18.

Defendants' failure to comply with their reporting obligations forces Plaintiffs to rely,

every day, upon an incomplete NICS database in performing their governmental obligations to

determine whether an individual seeking to possess, carry or retrieve a firearm is disqualified

from doing so.  That, in turn, directly and irreparably undermines Plaintiffs' ability to enforce the

state and local laws enacted to protect the public.

Defendants apparently misconstrue the nature of the irreparable injury alleged here.  That

injury is not limited to the recurrence of tragedies like the Sutherland Springs shootings.  Rather,

4813-8490-9914

it includes the daily frustration of Plaintiffs' ability to fulfill their governmental obligations to run accurate background checks. Once such a background check is completed, the opportunity to use disqualifying information to block a proposed firearm sale vanishes. That is thus a harm that is both instantaneous and irreparable.

This particular harm would immediately be cured, however, the moment Defendants achieve full compliance with their reporting obligations. Defendants are therefore entirely wrong when they argue Plaintiffs "have not explained how the order they envision would make any alleged irreparable harm less likely." (Defs. Mem. at 26.) That explanation is self-evident: a complete and accurate NICS system immediately ensures Plaintiffs are able to properly perform their governmental responsibility to determine whether an individual seeking to possess, carry or retrieve a firearm should be disqualified from doing so. *See* P.I. Motion at 20.

In addition, there is, unfortunately, good reason to believe that one or more of the 15,000 potential human time-bombs now able to purchase firearms that he or she should never obtain could indeed perpetrate another Sutherland Springs tragedy. Thus, the ultimate outcome here also could — as it did in Sutherland Springs — include grievous injury and death, the "ultimate irreparable injury." *Wilson v. Grp. Hospitalization & Med. Servs., Inc.*, 791 F. Supp. 309, 314 (D.D.C. 1992); *see* P.I. Motion at n.10.

### C.    The Balance of the Hardships and the Public Interest Warrants the Relief Requested by Plaintiffs

Defendants are correct that, where the government is a party, the final two preliminary injunction factors — the balance of the hardships and the public interest — converge, and are considered one and the same. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); (Defs. Mem. at 30). Here, that convergence clearly favors Plaintiffs. Congress has already determined that allowing disqualified individuals to possess and carry firearms poses a grave danger to the

4813-8490-9914

public.  Congress therefore enacted legislation (1) precluding the possession and carrying of firearms by disqualified individuals, and (2) ensuring that local governments could obtain the information necessary to enforce those laws.  Because that "government[] interest *is* the public interest," this ongoing harm to Plaintiffs itself warrants granting the relief requested.  *Pursuing America's Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original).

As for the "balance of the hardships," the absence from Defendants' papers of any substantive argument addressing that issue is notable.  It's likely explained by the simple fact that Plaintiffs' requested relief would not impose an undue hardship on Defendants at all.  Indeed, Plaintiffs merely seek to require Defendants to do what Federal law *already* requires them to do.

Defendants protest that the Court ought not act here because Defendants are already in the "process" of making remedial efforts.  (Defs. Mem. at 30.)  But that is clearly no roadblock to a suit like this, where there remains "a wide gulf between . . . being 'in the process' of implementing new procedures and having those new procedures fully in place."  *Fanin v. United States Dep't of Veterans Affairs*, 572 F.3d 868, 876 (11th Cir. 2009); *see also id.* ("[a]lmost moot is not actually moot.").[13]

_____

[13] *See Kennecott Utah Copper Corp. v. U.S. Det. Of Interior*, 88 F. 3d 1191, 1207 (D.C. Cir. 1996) ("An issue becomes moot if intervening events leave the parties without 'a legally cognizable interest' in our resolution of those issues . . . [Defendant] has the burden of proving that, because 'interim relief or events have *completely and irrevocably eradicated the effects of the alleged violation*,' [plaintiff] lack[s] such an interest.") (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)) (emphasis added); *Moore v. Millenium Acquisitions*, No. 1:14-cv-01402, 2016 WL 8730673, at *3 (E.D. Cal. 2016) ("[t]he speculative possibility that a case will be rendered moot in the future is thus not sufficient to demonstrate that a case is currently moot.")

Furthermore, even if Defendants finally appear to be taking steps in the right direction, the Fleming Declaration makes it clear those steps fall far short of remedying Defendants' two-decade non-compliance with law.  Nor do Defendants claim otherwise.  Defendants also offer no explanation for why they failed to undertake these recent initial steps decades earlier.  The absence of any such explanation necessarily fuels concern that, once the current spotlight is turned off, Defendants will again revert to their well-established pattern of non-compliance. Indeed, many of the remedial efforts Defendants describe even now amount to little more than promises to do better, with no tangible results thus far.  For example:

- The Marine Corps claims to have established a "task force" to review records, but that has apparently not resulted in the inclusion yet of *any* additional records in NICS (Defs. Mem. at 28); Fleming Decl. ¶¶ 32-33;

- The Administrative Record includes a February 9, 2018, Practice Directive from the Military Justice Branch of the Marines, purporting to implement "interim remedial measures."  But that document simply outlines procedures to be followed, with no evidence of actually curing the Marines' long-term historical under-reporting.  On that latter front, the document merely advises readers to stay tuned:  "[e]xpect and prepare for future remedial measures which *may* require examination of past cases."  *See* DoD OIG-000932-000938, attached to the LoBue Delc. as Exhibit A (emphasis added);

- While the Administrative Record includes a November 17, 2017, memo indicating the Navy planned to conduct "audit research" on its reporting of convicted offenders, on February 5, 2018, the Navy apparently decided to defer, indefinitely, even considering any such audit.  *See* DoD OIG-000950-000956, attached to the LoBue Decl. as Exhibit B;

---

Tellingly, the mootness authorities Defendants cite are all easily distinguished.  Each such cited case involved only claims of "unreasonable delay" in agency action, whereas Plaintiffs' here claim "agency action unlawfully withheld" *for two decades*.  *Cf. In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) ("assessing claims of agency delay"); *Cmty. Nutrition Inst. v. Young*, 773 F.2d 1356, 1361 (D.C. Cir. 1985) ("assessing claims of agency delay"); *In re City of Va. Beach*, 42 F.3d 881, 883 (4th Cir. 1994) ("Virginia Beach […] contend[s] that its vital water project continues to be egregiously and unreasonably delayed"); *In re Am. Fed'n of Gov't Emps., AFL-CIO*, 790 F.2d 116, 117 (D.C. Cir. 1986) ("the petition for mandamus pending before us, has charged the FLRA with unreasonable delay in processing negotiability and unfair labor practice appeals."); *Grand Canyon Air Tour Coal. V. FAA*, 154 F.3d 455, 476 n.21 (D.C. Cir. 1998) ("deciding whether to grant a petition for mandamus on the ground of agency action unreasonably delayed").

19

- Defendant Air Force has "established task forces to begin an examination . . . of data," has implemented a "review process," and is "assessing options to improve data-sharing and database management," but none of that is claimed to have yet resulted in the inclusion of substantial numbers of additional records in NICS (Defs. Mem. at 29); Fleming Decl. ¶¶ 36-41; and

- Nowhere do Defendants (1) claim that any one of the service branches is now 100% in compliance with their reporting obligations, or (2) state a concrete timetable for when each (or any) service branch will be 100% compliant.

The Army, to its credit, was able to complete a mass submission of over 32,000 names to the FBI on November 17, 2017 — just twelve days after that effort started. Fleming Decl. ¶ 16. But Defendants offer no explanation why none of the other armed services has yet done the same in the subsequent *four months*. While we are also told the Army "continues to directly update the information provided to the FBI weekly," *see id.* ¶ 21, there is, again, no indication any other armed service is doing the same.

Against this backdrop, Defendants' throw-away argument that judicial intervention here "could do more harm than good" (Defs. Mem. at 30), rings hollow. Indeed, it was Defendants themselves who created this problem, and then did nothing about it *for twenty years*, despite repeated warnings from their own Inspector General.

Finally, Defendants now have the temerity to protest that "Plaintiffs' motion is an effort to get a head start on a complicated remedial order." (Defs. Mem. at 25.) Given Defendants' twenty years of inaction, and given the approximately 15,000 potential human ticking time-bombs at issue here, Plaintiffs respectfully submit that such a "head start" is, in fact, long overdue. As noted by the Fourth Circuit, "a 'preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.'" *U.S. ex*

4813-8490-9914

*rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 495 (4th Cir. 1994) (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).[14]

## CONCLUSION

For the reasons stated here and in Plaintiffs' P.I. moving papers [ECF Nos. 10-13], Plaintiffs respectfully request that the Court grant their motion for a preliminary injunction and deny Defendants' Motion to Dismiss.

March 19, 2018

Respectfully submitted,

Kenneth W. Taber (admitted *pro hac vice*) (Lead counsel)
Matthew F. Putorti (admitted *pro hac vice*)
Nicholas M. Buell (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036
Phone: 212.858.1000
Fax: 212.858.1500
kenneth.taber@pillsburylaw.com
matthew.putorti@pillsburylaw.com
nicholas.buell@pillsburylaw.com

/s/ Laura B. LoBue
Matthew J. MacLean (VSB No. 44304)
Laura B. LoBue (VSB No. 74699)
Jeetander T. Dulani (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Phone: 202.663.8000
Fax: 202.663.8007
matthew.maclean@pillsburylaw.com
laura.lobue@pillsburylaw.com
jeetander.dulani@pillsburylaw.com

*Attorneys for all Plaintiffs*

---

[14] *See also East Tennessee Nat'l Gas Co. v. Sage*, 361 F.3d 808, 823-24 (4th Cir. 2004) ("A preliminary injunction is, of course, 'appropriate to grant intermediate relief of the same character as that which may be granted finally.'") (quoting *De Beers*); *see, e.g., Kirwa v. United States Department of Defense*, --- F. Supp. 3d ---, 2017 WL 4862763, at *10 (D.D.C. Oct. 25, 2017) (granting a mandatory preliminary injunction awarding the same relief ultimately sought in plaintiffs' underlying APA claim, and noting that "[a] preliminary injunction grants 'intermediate relief of the same character as that which may be granted finally.'") (quoting *De Beers*).

21

4813-8490-9914

Eric Proshansky (admitted *pro hac vice*)
Melanie C.T. Ash (admitted *pro hac vice*)
ZACHARY W. CARTER, CORPORATION
COUNSEL OF THE CITY OF NEW YORK
NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007
Phone: 212.356.2032 / 212.356.2276
Fax: 212.356.2038
eproshan@law.nyc.gov
mash@law.nyc.gov

*Attorneys for Plaintiff the City of New York*

Marcel S. Pratt (*pro hac vice* forthcoming)
Eleanor N. Ewing (*pro hac vice* forthcoming)
Benjamin H. Field (*pro hac vice* forthcoming)
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
(215) 683-5000
sozi.tulante@phila.gov
marcel.pratt@phila.gov
eleanor.ewing@phila.gov
benjamin.field@phila.gov

*Attorneys for Plaintiff the City of Philadelphia*

Dennis J. Herrera (admitted *pro hac vice*)
Yvonne R. Mere (admitted *pro hac vice*)
Owen J. Clements (admitted *pro hac vice*)
SAN FRANCISCO CITY ATTORNEY'S OFFICE
Fox Plaza, 1390 Market Street, 7th Floor
San Francisco, CA 94102-5408
Phone: 415.554.3874
Fax: 415.437.4644
yvonne.mere@sfcityatty.org
owen.clements@sfcityatty.org

*Attorneys for Plaintiff the City and County of San
Francisco*

22

4813-8490-9914

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of March, 2018, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:

> Dennis Carl Barghaan, Jr.
> United States Attorney's Office
> 2100 Jamieson Ave.
> Alexandria, VA 22314
> dennis.barghaan@usdoj.gov

And I hereby certify that I will cause the foregoing to be sent by certified U.S. mail and

email to the following non-filing user:

> Daniel Halainen
> Trial Attorney, Federal Programs Branch
> 20 Massachusetts Avenue, NW
> Washington, DC 20530
> daniel.halainen@usdoj.gov

> /s/ Laura B. LoBue
> Laura B. LoBue (VSB No. 74699)
> PILLSBURY WINTHROP SHAW PITTMAN LLP
> 1200 Seventeenth Street NW
> Washington, DC 20036
> Phone: 202.663.8000
> Fax: 202.663.8007
> laura.lobue@pillsburylaw.com

4813-8490-9914