1

1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF VIRGINIA
2            ALEXANDRIA DIVISION

3
THE CITY OF NEW YORK, *ET AL.*   )
4                                )
                                 )
5     VS.                        )    1:17-CV-1464   CMH
                                 )
6                                )    ALEXANDRIA, VIRGINIA
                                 )      APRIL 6, 2018
7                                )
THE UNITED STATES DEPARTMENT     )
8 OF DEFENSE, *ET AL.*           )
  _____)
9

10

11

12

13
_____
14
            **TRANSCRIPT OF MOTIONS HEARING**
15      **BEFORE THE HONORABLE CLAUDE M. HILTON**
             **UNITED STATES DISTRICT JUDGE**
16 _____

17

18

19

20

21

22

23

24 **Proceedings reported by stenotype, transcript produced by**

25 **Julie A. Goodwin.**

1                    **A P P E A R A N C E S**

2

3  FOR THE PLAINTIFF:
        PILLSBURY WINTHROP SHAW PITTMAN LLP
4        By:  MR. KENNETH W. TABER
         1540 Broadway
5        New York, New York  10036
         212.858.1000
6        kenneth.taber@pillsburylaw.com

7
         PILLSBURY WINTHROP SHAW PITTMAN LLP
8        By:  MS. LAURA B. LOBUE
                  -AND-
9        MR. JEETANDER T. DULANI
         1200 Seventeenth Street NW
10       Washington, DC  20036
         202.663.8000
11       laura.lobue@pillsburylaw.com
         jeetander.dulani@pillsburylaw.com

12

13

14 FOR THE DEFENDANT:
        UNITED STATES ATTORNEY'S OFFICE
15       By:  MR. DENNIS C. BARGHAAN, JR.
         Deputy Chief, Civil Division
16       2100 Jamieson Avenue
         Alexandria, Virginia  22314
17       703.299.3700

18       U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION
         By:  MR. DANIEL HALAINEN
19       Trial Attorney, Federal Programs Branch
         20 Massachusetts Avenue, NW
20       Washington, DC  20530
         202.616.8101
21       daniel.j.halainen@usdoj.gov

22

23 OFFICIAL U.S. COURT REPORTER:
        MS. JULIE A. GOODWIN, CSR, RPR
24       United States District Court
         401 Courthouse Square
25       Alexandria, Virginia  22314
         512.689.7587

3

1                     **A P P E A R A N C E S**

2

3   ALSO PRESENT:
        MR. OWEN CLEMENTS,
4       San Francisco City Attorney's Office

5       MS. MELANIE ASH,
        New York Law Department
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1  (APRIL 6, 2018, 9:59 A.M., OPEN COURT.)

2  　　　　COURTROOM DEPUTY:  Civil Action 2017-1464, *The City of*

3  *New York, et al. versus The U.S. Department of Defense, et al.*

4  　　　　MS. LOBUE:  Good morning, Your Honor.

5  　　　　THE COURT:  Good morning.

6  　　　　MS. LOBUE:  Laura LoBue representing plaintiffs.  I'm

7  joined by my colleagues, Ken Taber and Jeetander Dulani.  We're

8  also -- of Pillsbury.  We're also joined by Mr. Owen Clements

9  of the San Francisco City Attorney's office and Ms. Melanie

10  Ash, Assisted Corporation Counsel for the New York Law

11  Department.

12  　　　　THE COURT:  All right.

13  　　　　MR. BARGHAAN:  Good morning, Your Honor.  Assistant

14  United States Attorney Dennis Barghaan on behalf of the

15  defendants.  With me today is Daniel Halainen from the Civil

16  Division of the Department of Justice who will argue the cause

17  this morning on behalf of the government.

18  　　　　　　Your Honor, we're here today on the plaintiffs'

19  motion for a preliminary injunction, the defendants' motion to

20  dismiss.  I ask Your Honor how he would like to proceed with

21  argument, in what order?

22  　　　　THE COURT:  I don't really care.  You-all can pick the

23  order if you want.

24  　　　　MR. TABER:  Your Honor, our preference is the

25  plaintiff to go forward on the preliminary injunction motion

1   first.

2          THE COURT:  All right.

3          MR. TABER:  Thank you, Your Honor.

4              Your Honor, we prepared a notebook, which I gave to

5   the clerk and I gave to the government that contains the key

6   exhibits that I'm going to reference during this.  I hope Your

7   Honor has it in front of him.

8          THE COURT:  All right.  I've got it.

9          MR. TABER:  Terrific.  Thank you very much.

10             There are five issues, Your Honor, that I would

11  like to address, and they are not surprisingly the issues that

12  are present on every application for preliminary injunction.

13  Number one, likelihood of success on the merits; number two,

14  irreparable injury; number three, public interest; number four,

15  burden; and then finally remedy.

16             Turning first to the issue of our likelihood of

17  success on the merits, Your Honor, there are six separate

18  places all referenced in the notebook that we've given you

19  where the defendants admit that there has been two decades of

20  noncompliance with their obligations under federal law to

21  report to the FBI the identities of individuals disqualified

22  from gun ownership by virtue of military convictions or

23  dishonorable discharges.

24             The first, Your Honor, Exhibit 1, is the report

25  from the Office of the Inspector General in December of 2017,

1    just four months ago.  And in that report, he describes for

2    each of the service branches what are startlingly high numbers

3    of noncompliance.  That's just as of four months ago.

4            At page 2 of that same report, he says that this is

5    a problem that extends back to at least 1998.

6            Exhibit 2 is the Senate Judiciary testimony by the

7    Acting Inspector General of the Department of Defense from

8    December 6, 2017, and there at pages 15 to 16 he says that the

9    military services have failed to take his office's

10   recommendations, quote, as seriously as they should have, close

11   quotes.

12           At page 29, he says that they have failed, quote,

13   to take appropriate action to follow up on those

14   recommendations, close quotes.

15           Exhibit 2 also contains at page 10 the testimony of

16   the Secretary of the Air Force admitting that the Air Force has

17   not complied with this requirement.

18           Exhibit 3 contains a statement submitted to the

19   Senate Judiciary Committee on December 6th, 2017, saying that

20   corrections were not made retroactively as they should have

21   been and that the Air Force was not reporting as it should

22   have.

23           Exhibit 4 is the 1997 OIG report.  Exhibit 5 is the

24   2015 OIG report.  Together, these amount to six separate

25   admissions by the government of noncompliance with their

1   obligations under law for two decades.

2          So, what about the administrative record that's

3   been produced in this case?  It's close to a thousand pages.

4   You might reasonably ask, does that explain why for two decades

5   there has been noncompliance with the law?  And the answer

6   unfortunately would be, not at all.  It provides no explanation

7   as to why defendants violated the law for 20 years, but doesn't

8   dispute that they did.

9          What, then, you might ask about the aftermath of

10  the Sutherland Springs tragedy in November of 2017?  Your

11  Honor, despite having five months since that tragedy to address

12  this problem and cure it, it is clear now from the filings in

13  this case that the government has not cured it and does not

14  claim to have cured it.

15         There has, as Exhibit 8 in the notebook indicates,

16  that a mass submission of names by the Army, some 32,932 names

17  were submitted by them.  But no other service branch, Your

18  Honor, not one has made a similar mass submission.  Indeed to

19  the contrary, Exhibit 8 indicates that the Navy has submitted

20  in that five-month period just 104 new names.

21         Exhibit 6 shows the Navy promising to conduct an

22  audit, but then deferring that audit indefinitely.

23         Exhibit 7 shows the Marines saying that people

24  should, quote, expect and prepare for future remedial measures

25  which may require examination of past cases, close quotes, but

1  that hasn't happened yet either from the information that we

2  received.  That's just a promise that something may happen in

3  the future.

4         Exhibit 8 has several paragraphs describing what

5  the Air Force has done, but there's no suggestion of any

6  results of the reviews that they've been conducting.

7         Still, Your Honor, as we come here today before

8  you, no timetable is offered by the government for complete

9  compliance with law.  Not by the government, not by any branch

10  of the services.  There's no claim being made of complete

11  compliance by the government either.

12         And so, Your Honor, on these undisputed facts and

13  with these admissions that we've placed before you, we believe

14  that all five of the TRAC factors, that's T-R-A-C, for a

15  preliminary injunction being granted in this context have been

16  established here.

17         Number one, the first test, is the rule of reason.

18  And we respectfully submit, Your Honor, that requiring

19  compliance with law is plainly reasonable.  No contrary reason

20  is offered by the government for their inactions.  Not in the

21  administrative record, not in any of the filings that are

22  before you.

23         Second TRAC factor is the congressional timetable.

24  Here, that is absolutely clear by statute there is a

25  requirement of quarterly reporting to the FBI, or to the

1   Attorney General to be more precise.

2           Third TRAC factor, our human health and welfare at

3   stake.  The answer to that one I submit is easy.  The answer is

4   yes.

5           Fourth TRAC factor, is there any interference with,

6   quote, competing priorities, close quotes?  There's no

7   suggestion by the government that there are any competing

8   priorities at work here, anything that restricts them from

9   complying with law.

10          The fifth TRAC factor, Your Honor, is, quote, the

11  nature of the interest to prejudice by delay, close quotes.

12  And here, Your Honor, we would respectfully submit that the

13  nature of the incidence is potentially one of life and death,

14  as the Sutherland Springs events so starkly demonstrate.

15          And so in sum, Your Honor, on the issue of

16  probability of success on the merits, we believe that we have

17  demonstrated in our papers clear and convincing probability of

18  success, which is the standard applicable when as here

19  mandatory injunctive relief is sought.

20          So, I'll move on to the second issue for the grant

21  of injunctive relief, and that's irreparable injury.

22          Here, Your Honor, there are two kinds of

23  irreparable injury before the Court.  The first arises from our

24  estimate, which is set forth in the papers, that there are

25  based on the data that's been shared with us by the government

1  approximately 15,000 disqualified individuals, people who are

2  disqualified from gun ownership, by virtue of prior convictions

3  or by virtue of dishonorable discharges, who have still not

4  been reported to the FBI.  15,000.

5           Interestingly, the government has not challenged

6  that estimate in any of the papers.  Even if we're wrong and

7  off by a few thousand in either direction, the fact of the

8  matter, Your Honor, is that there are a very large number of

9  people who have already been adjudicated too dangerous to have

10  a gun, but today who can freely purchase a gun anywhere in this

11  country because their names have not been submitted into the

12  background check system.  Each one of them, Your Honor, is a

13  potential human ticking time bomb.  We can't name them.  We

14  don't know who they are, but the defendants can, and we

15  respectfully submit the defendants must.

16           Once they do that, we, this three plaintiffs here,

17  as well as every other user of the federal gun check system can

18  immediately stop selling guns to those individuals, or stop the

19  sale of guns to those individuals, I should say, by federal

20  firearm licensees.  As soon as we get that relief, this can be

21  fixed.

22           The OIG's report, Your Honor, from 2017, Exhibit 1,

23  says that pages 6 and 40 that, quote, any missing final

24  disposition report can have serious, even tragic consequences,

25  as may have occurred in the recent church shootings in Texas.

1   That's the government speaking, the Inspector General's office.

2   Those are the stakes.

3          And it's not speculative, Your Honor, because

4   they're already 26 dead Americans in Texas and 20 more who were

5   previously wounded because of this failure.  How many more,

6   Your Honor, will die before this problem is solved?  We think

7   the answer should be zero.  We think the solution begins here

8   and it begins today.

9          So that's the first kind of irreparable injury, the

10  risk created by 15,000 or so human time bombs.

11         The second kind of irreparable injury arises

12  because each and every time these three plaintiffs, these three

13  cities run a background check search to decide whether to allow

14  people to purchase guns, to issue permits or licenses or to

15  return guns that have previously been confiscated, every time

16  they run a check with something like 15,000 names missing, that

17  check is necessarily incomplete, necessarily faulty, and

18  potentially faulty to the point of creating violence that

19  follows.

20         Once a background check is completed, Your Honor,

21  the opportunity to use the disqualifying information in that

22  database vanishes.  The gun sale occurs.  It doesn't matter

23  thereafter.  The gun sale has occurred.

24         So that's a second form of irreparable injury here,

25  Your Honor.  It's not as the government originally suggested in

1  their opposition papers a principle of parens patriae.  It is

2  injury to the government, qua government, government fulfilling

3  its role under state statute to protect the public.

4         And it's not speculative injury, Your Honor,

5  because it happens every day.  Every day these gun checks are

6  run, and every day that database is missing huge amounts of

7  data that belong there.

8         It's also a harm, Your Honor, that's previously

9  been acknowledged by the government.  Exhibit 9 in the

10  notebook, Mr. Fine's written statement, confirms at page 3

11  that, quote, complete and consistent reporting by all DoD law

12  enforcement organizations is essential to nationwide law

13  enforcement efforts, close quotes.  Again, that's not us

14  speaking; that's the defendants speaking through the Inspector

15  General.

16         This is a classic governmental function that's

17  being blocked, Your Honor, and it leads to irreparable injury,

18  the second kind of irreparable injury in this case.

19         So, now I'd like to move on to the issues of public

20  interest and burden.

21         The public interest in safety, Your Honor, is

22  self-evident.  As Attorney General's -- as Attorney General

23  Sessions recently observed in the document we've included as

24  Exhibit 10, quote, NICS -- and that's the NIC system that we're

25  referring to here -- is critically important to protecting the

1  American public from firearms-related violence, close quotes.

2  Again, that's the federal government speaking.

3  And if that alone weren't enough proof of public

4  interest in this matter, Your Honor, there have been over a

5  thousand media stories about this very case confirming the

6  profound public interest in the subject raised.  Those stories

7  have been on every TV network, in every major newspaper; and

8  simply put, the country is watching us here today.  So that's

9  the public interest, and we think it's clear.

10  With respect to burden, Your Honor, the burden on

11  the government from what we are requesting is actually zero

12  because we are only asking that the government be compelled by

13  Your Honor to do what the law already requires them to do.  And

14  it's not a new law.  It's a law that's been in place for a very

15  long time.

16  So that brings me, Your Honor, to the fifth issue

17  and the final issue that I'd like to raise with the Court, and

18  that is the issue of remedy.  In the notebook, we've included

19  as Exhibit 11 our proposed order.  It seeks, first, to compel

20  defendants to report all disqualified individuals past and

21  present to the Attorney General by a date that would be set by

22  this Court.  We would propose that date be 90 days from today.

23  Second, it asks this Court to direct the defendants

24  to prepare a compliance plan, and we would suggest 60 days for

25  that.  That compliance plan, Your Honor, needs to do two

14

1  things.  It must fix this problem retroactively for all of the

2  names that are missing from the database, and it must fix it

3  prospectively to make sure that all the new names that need to

4  be included in the database are indeed included.  And we

5  suggest in our proposed order, Your Honor, that you require the

6  government to report to you on a monthly basis on their

7  progress in achieving their compliance plan and in implementing

8  that plan.

9         We do not envision this, Your Honor, as supervision

10  or anything like that on a day-to-day basis.  We do not

11  envision this as supervision for years to come, as the

12  government suggests in their papers.  This problem can be

13  fixed.  The Army is actually taking significant steps towards

14  fixing it, although they don't say it's fixed fully.  The other

15  services need to do the same.  Someone, Your Honor, needs to

16  mind the store, and we suggest that that someone needs to be

17  this court.

18         We propose, Your Honor, to return to the court

19  75 days from today, hopefully at that point with a joint plan

20  to end once and for all this deadly national problem.  Your

21  Honor, 20 years of delay and disobedience of the law is too

22  much.  15,000 human time bombs are too many.  Today, we hope,

23  will mark the beginning of the end of this national problem.

24         Thank you.

25         THE COURT:  All right.

1    MR. HALAINEN:  Good morning, Your Honor.  My name

2 again is Daniel Halainen from the federal defendants.

3    The question for the Court today presented by --

4    THE COURT:  If you would pull that microphone up.

5    MR. HALAINEN:  Sorry about that.

6    The question for the Court today presented by both

7 the government's motion to dismiss and the plaintiffs' motion

8 for a preliminary injunction is whether city governments, like

9 the plaintiffs, have the right under the Administrative

10 Procedure Act to intercede and the Department of Defense's

11 ongoing efforts to ensure compliance with the federal statute.

12 The short answer to that question is that they do not.

13    As Mr. Taber has just explained, what plaintiffs

14 are asking for today is wide-ranging judicial supervision of

15 the Department of Defense's operations, looking back for a

16 period of 20 years, including the review of the agency's

17 procedures and policies for providing information to the FBI

18 and also looking forward perspectively for some indefinite

19 period of time requiring monthly supervision by this Court of

20 how the Department of Defense is going about fulfilling its

21 obligations to provide information to the FBI.  And the

22 Administrative Procedure Act simply does not give the

23 plaintiffs a right to that kind of relief for three reasons:

24    First, because they don't have Article III standing

25 to bring that kind of claim; second, because the APA does not

16

1    provide for jurisdiction for this kind of problematic challenge

2    to how an agency operates; and third, because even if there

3    were jurisdiction, plaintiffs haven't made out a claim for the

4    kind of extraordinary mandamus relief that they're seeking

5    here.  And for those reasons, we think that the motion to

6    dismiss should be granted and the preliminary injunction should

7    be denied.

8              And I'll just talk for a couple of minutes about

9    those three points that I outlined, Your Honor.

10             THE COURT:  All right.

11             MR. HALAINEN:  So first, with respect to Article III

12   standing, plaintiffs are alleging that they have standing here

13   because of an injury arising from reliance on FBI databases

14   that contain information provided by the Department of Defense.

15   What the Courts have made clear is when a plaintiff is seeking

16   to allege this kind of Article III injury, it's not simply a

17   question of relying on a database.  When you're looking at

18   access to information, a plaintiff has to allege both that they

19   have a legal entitlement to disclosure of that information by

20   the government or the other defendant, and that the denial of

21   access to that information materializes into some concrete

22   specific harm.  It can't just be that plaintiffs allege that

23   they've relied on an inaccurate or incomplete database.

24             In this case, plaintiffs can't meet either of those

25   conditions.  The statute in question here governs a

1   relationship between the Department of Defense and the

2   Department of Justice, providing that the Department of Defense

3   will provide certain pertinent information to the FBI for use

4   in those databases.  That does not create a legal entitlement

5   in plaintiffs to disclosure of information by defendants to

6   them, nor does it create a right to access that information

7   through a third-party means.

8          As to the concrete harm, plaintiffs are saying that

9   they allege -- or excuse me -- plaintiffs are saying that they

10  rely on the database on a day-to-day basis, but that itself is

11  not a concrete harm.  And we know that from cases like the

12  Fourth Circuit's decision in *Dreher* and the DC Circuit's

13  decision in the *OOIDA* case, both of which we cite in our

14  papers.

15         What they need to establish in order to allege a

16  cognizable concrete harm is that something has happened as a

17  consequence that's concrete and material.  What they allege is

18  that they may potentially issue a permit or a license to

19  somebody who is prohibited from possession of a firearm, but

20  that is a speculative injury.  And what the Supreme Court has

21  said there is that it must be certainly impending in order to

22  be cognizable as an Article III injury.  And the record just

23  doesn't show that here.

24         So second, even if there were Article III standing,

25  there isn't jurisdiction under the APA for this kind of

1  systematic challenge to how the Department of Defense operates.

2  What plaintiffs are asking this Court to do is look at the

3  agency at a problematic level and the policies and procedures

4  in place to ensure that information is provided by the

5  Department of Defense to the FBI and evaluate those on a

6  problematic basis.

7            But what the APA requires is the challenge to a

8  specific discrete agency action.  And as we explain in our

9  papers, that's a term of art that requires meeting one of five

10 different definitions or the equivalent thereof.  And

11 plaintiffs simply haven't identified that kind of agency

12 action.  What they're looking for is for this Court to enforce

13 compliance with the statutory mandate, but that's simply not

14 the type of relief that's available under the Administrative

15 Procedure Act.  And what this Court has said previously, and

16 the Fourth Circuit and the Supreme Court, is that these types

17 of problematic challenges are not within the jurisdiction of a

18 Court to entertain under the APA.

19           So lastly, even if there were jurisdiction either

20 through standing or subject matter jurisdiction under the APA,

21 plaintiffs would still fail to state a claim of relief in the

22 nature of mandamus, which is what they're seeking here under

23 Section 706(1) of the APA.  The standards for that kind of

24 relief require a clear duty on the part of the defendant, the

25 government here, to act, to take a ministerial act, and that

1   that duty is owed specifically to the plaintiff.

2          And here, as I touched on earlier, the statute does

3   not provide any duty from the Department of Defense owed to a

4   city government, a municipal corporation like the plaintiffs.

5   And in terms of whether there's a ministerial action at issue

6   here, again, plaintiffs are seeking to enforce statutory

7   compliance writ large, and that's not a ministerial act that is

8   subject to compulsion under the APA.

9          So, for any of those three reasons, we think that

10  the motion to dismiss should be granted and that plaintiffs

11  haven't demonstrated a likelihood of success on the merits.

12         And I'll just take one minute to comment on even if

13  this Court were to deny the motion to dismiss, whether a

14  preliminary injunction should issue.

15         So, the type of preliminary injunction that

16  plaintiffs are seeking here is mandatory in nature requiring

17  the government to take action, not to preserve the status quo.

18  And that's strongly disfavored at the preliminary relief stage.

19  Similarly, the relief that they're seeking in a preliminary

20  injunction is the relief that they're seeking in the entire

21  lawsuit.  So granting the preliminary relief that they're

22  seeking here would essentially end the case, and that is also

23  not appropriate at a preliminary injunction stage.

24         As to the irreparable harm issue, as we've outlined

25  in our papers, the government is already engaged in -- in

1  serious and intensive efforts to ensure compliance with the

2  statute that's at issue in this case.  And what plaintiffs are

3  proposing is merely that they have before you to conduct

4  oversight over that process.  And it's not clear to me in any

5  of their papers how they've explained that their oversight will

6  prevent whatever sort of irreparable injury that they're

7  suggesting.

8         And again, as I touched on earlier, the irreparable

9  harms that they're suggesting here are speculative in nature.

10 They haven't actually identified a concrete, cognizable injury.

11        So, for that reason, even if this Court were to

12 deny the motion to dismiss, the preliminary injunction should

13 not issue.

14        Unless the Court has any further questions.

15        THE COURT:  No questions.

16        MR. HALAINEN:  Thank you, Your Honor.

17        THE COURT:  You want about 30 seconds to respond --

18        MR. TABER:  I do, Your Honor.

19        First point I want to make is that you didn't hear

20 any defense from the government on any of the facts that we

21 allege.  They're not contesting any of the facts that we

22 allege, so those facts should be taken as established at this

23 point.

24        The second point is their defense is largely legal

25 and really goes to their motion to dismiss.  And my colleague

1  Mr. Dulani, will respond to those legal points on standing --

2        THE COURT:  All right.  Well, let me hear from him

3  then.

4        MR. TABER:  Good.  And then --

5        THE COURT:  Because I've heard enough argument on

6  the -- on the injunction.

7        MR. TABER:  Okay.  Thank you, Your Honor.

8        MR. DULANI:  Good morning, Your Honor.  Jeetander

9  Dulani --

10        THE COURT:  Good morning.

11        MR. DULANI:  -- for plaintiffs.  I'll briefly cover

12  three points here.

13        The question here that the defendants raise is do

14  the plaintiffs have standing?  And the answer is unquestionably

15  yes.  Can agency inaction here, which is what we're talking

16  about -- this is not an issue of an agency making a decision,

17  unless the government is telling us that they sat in a room and

18  decided to defy a clear congressional mandate, which I don't

19  think they've done.  This is their failure to act, which in

20  fact is enforceable under 706(1).

21        And do mandamus principles block this suit?  The

22  answer is no, because the defendants are again confusing the

23  standard from mandamus when this is an administrative action,

24  and clearly the Courts have repeatedly noted that in an

25  administrative context you look at the zone of interest.  It's

1   not an issue of does the statute give you a particular duty to

2   the plaintiff.  You look to the zone of interest.

3          So I'm going to briefly go through those, Your

4   Honor, and -- and I think the case law on this is quite clear.

5          So, as Mr. Taber articulated, the three plaintiffs

6   here have shown injury, in fact, because they regularly access

7   and use the NICS database every day to make decisions about who

8   should or should not be allowed to obtain a firearm.  And

9   the -- as the information that they rely on is the information

10  that defendants are obligated to provide.

11         And they talked about a legal entitlement, so I

12  want to make one point that I think is really critical here,

13  Your Honor.  In the Supreme Court in *Norton v. Southern Utah*

14  *Wilderness* said clearly, Courts can compel agency action when,

15  quote, an agency failed to take a discrete agency action that

16  it is required to take.  That is exactly what 706(1) allows

17  for.

18         This discrete action is quite simple.  They have to

19  submit all of these names no less than quarterly.  We're not

20  asking for them, and we have not alleged, that we care about

21  what the Navy or the Army or the Air Force does in terms of how

22  they collect.  We are not trying to direct them about how they

23  should be doing their job.

24         They have a duty.  They have missed that quarterly

25  deadline for the last 20 years.  And their own papers show it;

1   their own testimony shows it.  So this is a discrete action

2   that they can in fact be compelled to take, and it's a

3   ministerial act.

4          Now, the Court in *Norton* was very helpful.  And one

5   of the things that they said was that when you have a discrete

6   agency action that's demanded by law, that, of course,

7   includes -- and I'm quoting here -- includes, of course, agency

8   regulations that have the force of law.

9          So, it simply does not pass any muster to say that

10  their duty is to the Attorney General, Your Honor.  There's an

11  entire regime of background checks here, and I want to direct

12  Your Honor to -- to a couple of -- a couple of those

13  regulations.

14         The very purpose of NICS is to -- is to facilitate

15  these background checks, and the regulations confirm that.

16  28 C.F.R. 25.6(j)(i) says, one of the express purposes of NICS

17  is to, quote, provide information to local criminal justice

18  agencies in connection with the issuance of a firearm-related

19  permit or license.  28 C.F.R. 25.6(d), the NICS will provide

20  POCs - which are plaintiffs here - with electronic access to

21  the system virtually 24 hours each day through the NCSE

22  Communication Network.

23         This is not a bare procedural violation.  It's not

24  divorced from concrete harm.  This is not an inner agency

25  squabble.  Plaintiffs are injured.  They have a right to this

24

1  information.  Defendants have a legal obligation to provide

2  this information.

3          Your Honor, if they did not have a legal

4  obligation, why is the Inspector General testifying before

5  Congress?  Why are these reports being written?  It doesn't

6  make any sense.  If your duty is to the Attorney General, I

7  would submit that you wouldn't be doing any of this.  You would

8  be fighting with the Department of Justice and saying, hi, we

9  don't have to give this to you.  The fact we didn't give you

10 all of it is -- is of no consequence.

11         And let's be clear, Your Honor, the statute and the

12 regulations do not say that the DoD gets to pick that they're

13 going to submit 25 percent, 50 percent, 75 percent.  When you

14 look at those OIG reports, what you find is when you go

15 function by function some of those functions actually were 75

16 percent deficient, 95 percent deficient.  That's not enough.

17         And again, we are not asking the Court, nor are we

18 asking the Court to allow us to supervise any of that

19 collection.  That's their job.  We're simply asking the Court

20 under 706(1) to compel the discrete agency action that this

21 Court is allowed to -- to compel because they have a duty to

22 report quarterly; simple, full stop.

23         Now, they have argued -- I think I've explained the

24 APA point and the -- and the injury point.  They've also talked

25 about mandamus.  And on mandamus, I'd like to draw the Court's

1  attention to the zone of interest test.

2       The Tenth Circuit had a very helpful discussion

3  about this in *Hernandez-Avalos v. Immigration and*

4  *Naturalization Service*.  They said, a duty is owed in the

5  administrative context if plaintiff's interest is within the

6  zone of interest protected by the underlying statute.

7       Now, the zone of interest test that the Supreme

8  Court has -- has opined on and they've made it very clear, that

9  test is not meant to be especially demanding.  You look to what

10  the zone of interest is to be protected or regulated by the

11  statute.  And any benefit of the doubt, and this is this Court

12  in *King v. Sebelius*, quote, any benefit of the doubt about the

13  zone of interest should go to the plaintiff.

14       So, I don't think there is any doubt, Your Honor,

15  but if there was, we're entitled to the benefit of the doubt.

16  And I think it's very clear that Congress expected this program

17  to operate with cooperation from the states and from local

18  agencies.  We are, if you will, Your Honor, we're out on the

19  front lines, you know, serving as the intermediaries, making

20  sure that the right people either don't get permits that

21  they're not entitled to, or in some cases we actually are

22  responsible for returning the firearms to people.  And as

23  Sutherland Springs has demonstrated, getting that wrong has

24  consequences.

25       And one thing that I also note, Your Honor, in

1   their motion to dismiss they at no point argued that the relief

2   that we're seeking would not be a remedy.  They at no point

3   argued that their act -- their inaction here was not the cause

4   of the harm that we've articulated.  They have admitted that,

5   Congress and in written reports.

6           So, in brief, Your Honor, there's no question here

7   that plaintiffs have standing, we've been injured, we're

8   entitled to this information, and this Court has the ability

9   and -- and Justice Scalia made it very clear in *Norton* that --

10  he gave a great example which I think actually shows how easy

11  this case can be resolved.  He talked about if the FCC was --

12  was required to issue regulations around the Telecommunications

13  Act in six months.  He made it very clear.  He said a Court

14  could do that.  A Court could order the FCC to do so.

15          Here, both the actual disclosure and the timing of

16  it are clear.  We're not asking, as the government's trying to

17  argue, what the regulations are.  There's no debate about that.

18  It's turning the names and the fingerprint records so they can

19  be used, because we use them every day to make decisions that

20  affect public safety, that implement this program that Congress

21  and the DoD and the DOJ have created an entire repertory regime

22  around.  We are clearly affected by their failure.

23          THE COURT:  All right.  I understand your position.

24  I'll look at this a little further and get you-all an answer as

25  quickly as I can.

1          MR. TABER:  Thank you, Your Honor.

2          THE COURT:  And we'll adjourn until Monday morning at

3     9:30.

4          THE LAW CLERK:  All rise.

5              (PROCEEDINGS CONCLUDED AT 10:36 A.M.)

6                            -oOo-

7

8     UNITED STATES DISTRICT COURT    )

9     EASTERN DISTRICT OF VIRGINIA    )

10

11         I, JULIE A. GOODWIN, Official Court Reporter for

12    the United States District Court, Eastern District of Virginia,

13    do hereby certify that the foregoing is a correct transcript

14    from the record of proceedings in the above matter, to the best

15    of my ability.

16         I further certify that I am neither counsel for,

17    related to, nor employed by any of the parties to the action in

18    which this proceeding was taken, and further that I am not

19    financially nor otherwise interested in the outcome of the

20    action.

21         Certified to by me this 22ND day of JUNE, 2018.

22

23                        _/s/_____
                          JULIE A. GOODWIN, RPR
24                        CSR #5221
                          Official U.S. Court Reporter
25                        401 Courthouse Square
                          Alexandria, Virginia  22314

28

1                              <u>**INDEX**</u>

2

3 **APRIL 6, 2018**

                                                        <u>PAGE</u>
4

5 Argument by Mr. Taber................................   5
  Argument by Mr. Halainen............................  15
6 Further Argument by Mr. Taber.......................  20
  Argument by Mr. Dulani..............................  21
7 Reporter's Certificate..............................  27

8                          -*-*-*-

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                    Julie A. Goodwin, CSR, RPR